# BELKNAP,

## JULY TERM, A. D. 1855.

---

## HUCKINS *v.* THE PEOPLES' MUTUAL FIRE INS. CO.

A witness may refer to a written memorandum or to entries in a book, whether made by himself or others, to refresh his memory, provided that, after inspecting them, he can testify to the facts from recollection.

A judge, at the trial, may permit counsel, on a direct examination, to suggest to a witness names, dates and items, provided that the witness has exhausted his memory, and the purposes of justice require such a course to be taken.

A party is not obliged to produce his books of account on trial; and if he does so, it may be with the condition that, if examined, they shall be read in evidence. The party notifying need not comply with the condition, but may give secondary evidence of the contents.

Carelessness is no defence to an action upon a policy of insurance. In the absence of fraud, it is the proximate cause of the loss that is to govern. If, however, the acts done, or neglected to be done, are of a character tending to show design or fraud, they will be admissible evidence upon those grounds.

Where a policy of insurance was issued upon English, American and West India goods, and among the articles lost were teas and nutmegs, and the defendants requested the court to instruct the jury that, if they were satisfied that these articles were not either English, American, or West India goods, then the plaintiff could not recover—*held*, that the instructions were properly requested.

Where a by-law of a mutual fire insurance company, which was made a part of the policy, provided that "in case of loss by fire, the company will in no case pay more than two-thirds on personal property and three-fourths on real estate, of the actual cash value of the property at risk at the time of the fire"—*held*, that the amount of the loss was to be determined by the value of the property at the time of the fire, and not by the value at the time of the insurance.

Huckins *v.* The People's Mut. Fire Ins. Co.

Where a policy of a mutual fire insurance company whose charter and by-laws permitted an insurance to the extent of two-thirds the value of the property at the time of the loss, was issued for $1500, on a stock of goods stated in the application to be of the value of $2000—*held*, that the assured could recover the whole amount insured, provided there was a total loss, and the cash value of the goods at the time of the fire was $2250.

ASSUMPSIT, to recover the sum of $1500, insured by the defendants upon the plaintiff's stock of goods, in his store in Meredith, which were burned on the 11th day of January, 1853. The writ is dated May 5, 1853. The declaration, application, policy, charter and by-laws of the company, existing December 15, 1852, may be referred to as a part of this case.

The plaintiff's son testified that he had been employed in a grocery store in Boston, five months previous to December, 1852, and that since the loss he had been and was employed in a victualing store in Boston; that he helped his father in selling goods in his store from the first of December aforesaid till the time of the loss; that sundry goods were added to the stock after the date of the policy. And he testified concerning the amount of daily sales; that about the first of said December he assisted his father in taking an invoice of his stock of goods, which invoice, with all the bills of goods purchased, and all the books of accounts except the ledger, were burnt.

That in a few days after the fire he and his father made out a memorandum from memory, of what goods of the plaintiff were in the store at the time of the fire. The witness wrote what he could recollect on a slate, and saw his father enter the same on a paper, together with what his father alone remembered. The witness was allowed, the defendant excepting, to recur to this paper to refer to those articles thereon which he distinctly recollected were entered there by his father, as the witness gave them to him, for the purpose of refreshing his recollection of what goods were in the store at the time of the fire.

The plaintiff offered this witness to prove the purchase at different times, of sundry persons in the vicinity, of part of the goods alleged to have been burnt, to which testimony the defendants excepted, alleging that as duplicate bills had been obtained by the plaintiff, in some instances, the persons who made those bills should be called, but the court allowed the witness to proceed, and the plaintiff's counsel to suggest to the witness the names of certain articles alleged to have been purchased, and to inquire of the witness about the same, he having first exhausted his memory.

Upon the trial, the defendants notified the plaintiff to produce his ledger; the plaintiff produced the ledger under the notice, and offered it to the defendants, upon the condition that, if examined by them, it should be read in evidence; and the court ruled that if the defendants did examine the ledger, the plaintiff might read it in evidence, to which the defendants excepted.

The defendants asked the court to instruct the jury that the plaintiff was bound to the exercise of all that skill, care and prudence usually employed by persons of that description engaged in mercantile business, and that for any want of such skill, care and prudence in conducting his business, the plaintiff alone must suffer, which the court declined to do; but instructed them that "they would consider whether the plaintiff had not conducted, in this matter, in a manner quite common among country traders. And that even if the plaintiff was a careless man in his business, the defendants could not object; he was the kind of man they had seen fit to contract with; they knew or might have known his character; that the careless man needs insurance far more than one who is bred to the utmost caution and painstaking care;" to which instructions the defendants excepted.

The defendants asked the court to instruct the jury that if they were satisfied that the tea or the nutmegs were not

either English, American or West India goods, then the plaintiff could not recover for those articles, whereupon the court instructed the jury as follows, viz.:

" It was, doubtless, the intention of the parties to insure the plaintiff's whole stock in trade. The description was written by the agent of the defendants; the application asks for insurance on English, American and West India goods, and in one part of it describes the stock in trade as consisting of English, American and West India goods, manifestly showing that it was the stock in trade which was to be insured, and that if it be so, an immaterial error in the description constituting that stock would not conclude the plaintiff from showing of what it actually did consist. No satisfactory evidence has been produced to the court from which the court can say that these articles are not included in the goods insured. The English dominions extend to every clime, and to every kind of productive soil. The plaintiff must satisfy you that the policy which makes the application a part of it, covers all the goods which you shall consider as insured, in making up your estimate of his loss." To which the defendants excepted.

The plaintiff offered evidence tending to show that the value of his stock of goods so insured and burnt, exceeded the sum of $2000, at the time of the loss. The court, upon this matter, instructed the jury thus:

" The application represents the value of the goods insured to be $2000. The defendants, by issuing their policy thereon, have assented to that as a correct valuation on the 15th of December, 1852; and so far as concerns the value of the goods insured, in questions arising between these parties, that sum is to be deemed the true value on that day, unless impeached by the defendants. The burden of proof rests upon the defendants to show that this valuation was incorrect, and it is for you, upon a view of all the evidence, to judge if the value of that stock, from that time to the time

of the fire, was reduced, and if so, to what extent." To which instructions the defendants excepted.

The court further instructed the jury, that "having ascertained the value of all the goods lost and covered by the policy, you will deduct therefrom one-third of it; and if the remaining two-thirds do not exceed $1500, you will render your verdict for that sum, with interest from the date of the writ." To which instructions the defendants excepted.

After the jury had retired to their room to deliberate upon the case, they sent to the court the following question:

" Can the jury exceed two-thirds of $2000 and interest for the plaintiff, if they find a sufficient amount of goods, so that the two-thirds amount to a sum more than $1333,33, and not exceeding $1500 ?"

To which the court returned the following reply, having submitted the same to the counsel for the plaintiff and defendant, and they assenting thereto, viz.:

" They can, if they are satisfied that the amount which they so find does not exceed two-thirds of the amount of goods which were actually lost by the fire, and which were covered by the policy."

The jury then inquired further thus:

" Do you refer to the sum insured, or to the valuation in the application, as the application is a part of the policy ?"

The court answered thus:

" They mean, covered by the terms and language of the policy, embraced within the description of goods insured."

The jury returned a verdict for the plaintiff for a sum which, added to the sum confessed in the action, amounted to $1564,19, which verdict the defendant moved to set aside for the foregoing alleged errors and exceptions.

And it was ordered that the questions arising upon the case be reserved and assigned for the consideration of the superior court.

*Badger, Vaughan* and *Stevens,* for the defendants.

Huckins *v.* The Peoples' Mut. Fire Ins. Co.

1.  In the application, and also in the policy, the property insured is described as consisting of English, American and West India goods; and we deny that it was intended to embrace articles except such as were purely English, American and West India; and if the plaintiff's stock of goods and merchandize embraced articles not reckoned or known to be English, American or West India, they were not insured or intended to be insured. Teas are not of English or American growth. The terms of insurance in application are general; no particular article is insured or mentioned, and as teas are mostly the production of the East Indies, and imported both into England and America, in great quantities annually, and not produced in either of the latter places, they cannot be considered as included in the terms of English, American, or West India goods; and the instruction of the court to the jury, that it was doubtless the intention of the parties to insure the plaintiff's whole stock in trade, is saying more than is asked for in the application of insurance; and, in fact, at the time of the making of the insurance, these teas were not purchased, so that it was not understood then to include the teas, and they were not insured.

II.  The application of insurance, signed by the parties, is the contract between the parties, and unless there is something in the policy or by-laws to change or control the application, and do away what might be considered otherwise binding, the application is to be considered the contract between the parties.

It is stated in the application that "not more than two-thirds of the cash value of the buildings and half of the personal property, will be insured by this company; and in case of loss, the company will not pay more than the proportions above named of the cash value at the time of the loss, if less than the amount insured," &c. Therefore it is clear, by the application, that in case of loss by fire, no more

than one half of the cash value of the personal property
could be recovered.

There is a clause in the policy in these words : " Provided
always that this company will not be liable for more than
three-fourths of the actual cash value of the property de-
stroyed by fire, and covered by this policy." Also, in the
by-laws of the company, (art. 14,) it reads thus : " That in
case of loss by fire, the company will in no case pay more
than two-thirds on personal property, and three-fourths on
real estate, of the cash value of the property at risk at the
time of loss." It is merely a denial, on the part of the com-
pany, in each of the foregoing clauses, that it will not pay
beyond a certain sum, but in neither case does it determine
the amount ; that is left open, and may be one half, two-
thirds, or some other sum, to be agreed upon by the com-
pany and the insured, of the loss sustained, but not to ex-
ceed, in any case, three-fourths of the cash value of the prop-
erty. In this case, the application which contained the con-
tract between the parties, was only to pay one half of the
cash value of the personal property, in case of loss, and
there is nothing in either the policy or by-laws to change or
alter the contract. Consequently, the instructions by the
court to the jury were wrong and erroneous, inasmuch as
they say that, " having ascertained the value of all the goods
lost and covered by the policy, you will deduct therefrom
one-third of it ; and if the remaining two-thirds do not ex-
ceed $1500, you will render your verdict for that sum, with
interest from the date of the writ."

Also their instructions to the jury, after they had retired,
were wrong, by saying that " they can, if they are satisfied
that the amount which they so find does not exceed two-
thirds of the amount of goods which were actually lost by
the fire, and which were covered by the policy. The court
should not have instructed the jury, "if they find two-
thirds." If the court had given them any instruction what-
ever, it should have been not to exceed one half of the

amount of goods which were lost, &c.; and the teas and nutmegs should have been deducted from that amount, which would have reduced the sum to what was confessed by the defendants.

*Bellows* and *Moulton*, for the plaintiff.

A witness may refresh his memory by referring to a paper which he saw written, although not in his hand-writing, provided, after inspecting it, he can speak of the facts from his own recollection. 1 Greenl. Ev. § 436.

The testimony of the witness to the purchase and bringing into the store of goods of various persons, was just as competent as the testimony of the vendors themselves. There was no pretence that the original bills were saved, and the testimony of the vendor was no better than that of the witness.

After the memory of the witness is exhausted, the party calling him may properly suggest the names of articles and dates. 1 Greenl. Ev. § 435.

As to the ledger, no action was had upon it. The plaintiff produced it, and offered it to the defendants, upon condition that, if examined by them, it should be read, and it was produced upon no other condition. The defendants might then offer evidence of its contents or not, as they pleased, but could not compel the plaintiff to produce it. No evidence was offered by the defendants touching the contents of the ledger. Besides, the opinion of the court is sustained by authority. 1 Greenl. Ev. 563; *Jordan* v. *Wilkins*, 2 Wash. C. C. Rep. 482; *Penobscot Boom Corporation* v. *Lamson*, 4 Shep. 224; *Wilson* v. *Bowie*, 1 Carr. & Paine 8; 1 Phil. Ev. 441; *Calvert* v. *Flower*, 7 Carr. & Paine 386.

It is no defence that the loss was occasioned by the carelessness or negligence of the plaintiff or his servants, unless fraud or design is proved. Angell on Fire and Life Insurance 156–160; 1 Phill. on Insurance 632, 633.

The stock of goods was insured, and it was described as consisting of English, American and West India goods. The court did right in instructing that the jury must be satisfied that the goods considered as insured were covered by the policy. If the tea actually was insured as part of the stock in trade, it is immaterial what the parties chose to call it.

The instruction of the court that the valuation of the goods in the policy and application is *prima facie* evidence of the value on the 15th of December, is favorable enough for the defendants. We hold it to be conclusive in the absence of fraud. Angell on Fire and Life Ins. 273, 274, 275, 276, 277, and authorities cited.

The contract by the policy is, to insure three-fourths of the value at the time of the loss, not exceeding $1500. The by-laws limit the proportion to two-thirds, but there is no such restriction in the charter.

If, then, there was a valid insurance to the amount of three-fourths of the value, the instruction to the jury that they might deduct one-third from the amount found, could afford no ground of complaint to the defendants, as the deduction should have been only one-fourth.

Again, if it be held that the insurance is only for two-thirds of the value, the valuation in the policy is conclusive only at the time of the insurance.

It may be shown that the amount at risk, at the time of the loss, was less than the $2000 ; and, on the other hand, that the amount exceeded that sum.

If it be held that the proportion is two-thirds instead of three-fourths, then the contract would be to pay the $1500 on the property being burned, provided that that did not exceed the value at risk at the time of the loss.

EASTMAN, J. Upon the first three points raised at the trial, the ruling was correct. A witness may refer to a written instrument or memorandum, or to entries in a book, for the purpose of refreshing his recollection or assisting his

memory, whether made by himself or others, provided that, after inspecting them, he can testify to the facts from his recollection. *Howland* v. *The Sheriff of Queens County*, 5 Sandf. 219; *Lawrence* v. *Baker*, 5 Wend. 301; *Welcome* v. *Batchelder*, 10 Shep. 85; *Redden* v. *Spruance*, 4 Harr. 47; 1 Greenl. Ev. § 436, and authorities cited. And it is within the discretion of the court, at the trial, to permit leading questions to be put to a witness, or to have suggested to him names, dates and items which cannot be significantly pointed to by a general interrogatory, if the witness has exhausted his memory, and the purposes of justice require such a course to be taken. And this rule must necessarily be regulated by the circumstances of each case. *Moody* v. *Rowell*, 17 Pick. 498; *Acerro & a.* v. *Petroni*, 1 Stark. Rep. 100; 1 Greenl. Ev. § 435.

The testimony of the witness as to the purchasing of the goods, was not secondary. It did not disclose evidence of a higher degree. It might also be as satisfactory as duplicate bills made out months after the purchases. Of that the jury would judge. If competent, as it was, it was admissible.

The plaintiff was not obliged to produce his ledger, and could attach to its production the condition which he did. If the defendants saw fit to examine it with that condition they might, or they could decline and produce secondary evidence of its contents.

And in regard to the next point, we are of opinion that the instructions asked for were properly declined. Carelessness or negligence, as such, cannot be held to be a defence to an action upon a policy of insurance. In the absence of fraud, it is the proximate cause of the loss that is to be considered. *Williams* v. *The New England Mu. Fire Ins. Co.*, 31 Maine Rep. 219; *Gates* v. *Madison County Ins. Co.*, 1 Selden's (N. Y.) Rep. 469. If, however, the acts done or neglected to be done are of a character which tend to show design or fraud, they would be admissible. And in *Chan-*

dler v. *The Worcester Mutual Fire Ins. Co.*, 3 Cush. 328, it was held that a party *may* be guilty of such gross misconduct, not amounting to a fraudulent intent to burn the buildings, as to preclude him from recovering for a loss of the same by fire. In explanation of this decision the learned Chief Justice, *Shaw*, remarks: " By an intent to burn the building we understand a purpose manifested and followed by some act done, tending to carry that purpose into effect, but not including a mere nonfeasance. Suppose the assured, in his own house, sees the burning coals in the fireplace roll down on to the wooden floor, and does not brush them up; this would be mere nonfeasance. It would not prove an intent to burn the building ; but it would show a culpable recklessness and indifference to the rights of others. Suppose the premises insured should take fire, and the flame begin to kindle in a small spot, which a cup of water would put out; and the assured has the water at hand but neglects to put it on. This is a mere nonfeasance ; yet no one would doubt that it is culpable negligence in violation of the maxim, *Sic utere tuo ut alienum non laedas*." The cases put by the distinguished chief justice would, according to the civil law, be of themselves proof of fraud, or equivalent to fraudulent purpose or design. They are indeed supposable, but from such facts a jury would be very likely to find intentional fraud. Although such negligence consists in doing nothing, and may therefore be a nonfeasance, yet the doing of nothing, when the slightest care or attention would prevent a great injury, manifests a willingness, differing little in character from a fraudulent and criminal purpose to commit such injury.

This case does not weaken the position that negligence or carelessness is not a defence to an action upon a policy of insurance ; nor is it an authority for the defendants, for they proposed to show no such gross negligence as that spoken of by the chief justice.

But the instructions next asked for should have been

given. The insurance was on English, American and West India goods, and upon no others. The defendants asked the court to instruct the jury that if they were satisfied that the tea or the nutmegs were not either English, American or West India goods, then the plaintiff could not recover for those articles. This request appears proper; and, we think, should have been complied with. The plaintiff cannot recover for goods differing in kind from those insured, and it ought to have been left to the jury to say, from the evidence, whether the articles specified were of the kind insured or not.

We think, also, that the instructions given upon the next point might, perhaps, mislead the jury. The fourteenth article of the by-laws is as follows: " In case of loss by fire, the company will in no case pay more than two-thirds on personal property, and three-fourths on real estate, of the actual cash value of the property at risk at the time of the loss. Partial losses will be paid in full, anything in the by-laws to the contrary notwithstanding." Had the fire taken place on the night after the policy was issued, the company would not have been controlled by the valuation stated in the application for insurance, but might have shown its true value when the fire occurred. The application is not made under oath, and where it is for insurance on a stock of goods, as in this case, exactness cannot be obtained without taking an inventory, which is probably never done in making the application. The rule governing this question was recently considered by the court, in *Atwood* v. *The Union Mutual Fire Insurance Company*, 8 Foster's Rep. 234. The loss is to be determined by the value of the property at the time of the fire, independent of its value at the time of the insurance. See, also, *Post* v. *Hampshire Mut. Fire Ins. Co.* 12 Met. 555.

The remaining instructions were sufficiently favorable to the defendants. They were, as we understand them, to this effect: that the plaintiff could recover the full amount of

his insurance viz. $1500, provided he could show that, at the time of the fire, he had on hand goods in his store, of the kind insured, of the value of. $2250, and that $1500 worth were destroyed by the fire.

The charter, in the fourth section, provides that the directors shall determine the sum to be insured on every building, not exceeding three-fourths of its value. It is silent as to the amount to be insured on personal property. It, however, provides for the making and putting into execution such by-laws, ordinances and resolutions, not repugnant to the laws of the State, as may be necessary for the regulation, management and government of their affairs. And the fourteenth by-law is as above quoted. The policy contains this clause: " provided, always, that this company will not be liable for more than three-fourths of the actual cash value of the property destroyed by fire, and covered by this policy." Taking the charter, by-law and policy together, we think that the least that could be recovered in case of a total loss would be two-thirds of the amount on hand, not exceeding the sum insured. The memorandum at the top of the application that not more than two-thirds of the cash value of buildings, and half the value of personal property will be insured by the company, is not embraced within the application, as signed by the plaintiff. But even if it were, it would not control the charter and by-law and the policy issued by the company. The defendants agreed to insure the plaintiff to the amount of $1500, with an application before them, asking insurance on that sum, and valuing the property at $2000, and they issued their policy accordingly. This sum the court instructed the jury should be paid, provided it had been lost, and provided it did not at the time of the fire, exceed two-thirds of the amount on hand. And we think that the company had no ground to complain of this instruction.

But for error in the instructions given on the fifth point the verdict must be set aside, and a

*New trial granted.*