**WALKER v. UNITED STATES et al.**

No. 10,002.

United States Court of Appeals
Seventh Circuit.

Feb. 23, 1950.

Christopher C. Wimbish, Chicago, Ill., George N. Leighton, Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty. Chicago, Ill. Francis D. O'Mara, Stephen Jurco, Chicago, Ill., Ralph E. Brill, Terre Haute, Ind., Thomas F. O'Mara, Terre Haute, Ind., for appellee.

Before FINNEGAN, LINDLEY, and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This is an appeal from a judgment of the District Court for the Northern District of Illinois, Eastern Division, awarding the proceeds of two National Service Life Insurance policies aggregating $10,000.00 to the intervening defendants who are the brothers and sisters of the assured, Raymond D. Walker, rather than to the named beneficiary, Ernestine R. Walker, referred to in the policies as the "wife" of the assured.

Ernestine R. Walker, the plaintiff, commenced this action when the Veterans' Administration refused to pay her the proceeds of the two policies on the ground that on March 21, 1942, when she allegedly mar-

ried the assured in St. Louis, Missouri, she was the wife of Walter A. Walker, whom she married in Birmingham, Alabama in 1930; that this prior marriage had not been dissolved at the time she married the assured; that she was not the lawful widow of the assured and, therefore, not within the class of beneficiaries permitted by the National Service Life Insurance Act.

The defendant, United States, counterclaimed for interpleader as to Chester A. Walker, the father of the assured, who was named as contingent beneficiary in the policies. Thereafter, Chester A. Walker, the father died; and the surviving brothers and sisters of the assured were then ordered substituted as intervening parties defendant. These intervening defendants adopted the pleadings of Chester A. Walker, denying that plaintiff was the widow of the assured, and asserting that she was, therefore, not entitled to the proceeds of the insurance policies.

The appeal presents two contested issues: 1. Was the finding and judgment of the trial court that the marriage of the plaintiff to the assured was void, supported by the evidence? 2. Did the trial court properly construe the applicable provisions of the National Service Life Insurance Act, 38 U.S.C.A. § 801, et seq.?

■ Prior to August 1, 1946, the provision of the Act limiting the class of beneficiaries, 38 U.S.C.A. § 802(g), provided as follows: "The insurance shall be payable only to a widow, widower, child * * * parent * * * brother or sister of the insured. The insured shall have the right to designate the beneficiary or beneficiaries of the insurance, but only within the classes herein provided, * * *."

On August 1, 1946, the following proviso was added to this section: "Provided, That the provisions of this subsection as to the restricted permitted class of beneficiaries shall not apply to any national service life-insurance policy maturing on or after August 1, 1946." 38 U.S.C.A. § 802(g) (1949 Supp.). The plaintiff insisted that this proviso was to cover cases such as this where the insured soldier had, before his death, named a beneficiary who was not within the permitted class.

The language of the proviso makes this construction impossible. The proviso was to be applicable only to policies *maturing* on or after August 1, 1946. When we speak of a legal obligation maturing, we are speaking of the due date or time for payment. When we speak of a life insurance policy maturing, we are speaking of the time when payment on the policy becomes due, here by the death of the assured. In this case the insured soldier died on December 10, 1944. At that time his policies of insurance matured. The proviso was, therefore, not applicable to these policies. United States v. Napoleon, 5 Cir., 296 F. 811, 814. Bradley v. United States, 10 Cir., 143 F.2d 573.

■ The plaintiff also relies on the provision of the Act concerning incontestability of policies. 38 U.S.C.A. § 802(w) (1949 Supp.) provides: "Subject to the provisions of section 812 of this title, all contracts or policies of insurance before or after August 1, 1946 issued, reinstated, or converted shall be incontestable from the date of issue, reinstatement, or conversion except for fraud, nonpayment of premium, or on the ground that the applicant was not a member of the military or naval forces of the United States." The plaintiff contends that this provision forecloses the United States from denying payment of the proceeds of these policies to the plaintiff who was the named beneficiary therein. We think it clear, however, that this clause only prevents the United States from contesting the validity of the obligation to pay the insurance, and does not go to the question of the person to whom the proceeds of the insurance policy shall be paid, this question being expressly covered by Section 802(g). Here the defendant, United States, is not contesting the fact that there is a valid obligation to pay the amount of the policies, but is only asking the determination of the courts as to whom the proceeds should be paid. This does not constitute a contest of the policies within the meaning of the Act.

It is not controverted that if the plaintiff was not the widow of the insured, the proceeds of the insurance must be paid to the intervening defendants who were shown to be the surviving brothers and sisters of the

assured, pursuant to the provisions of Section 802(h).

The trial court found that the marriage of the plaintiff to Walter A. Walker on January 20, 1930, was a lawful marriage; that she lived with said Walter A. Walker, as his wife, until August 15, 1940; that this marriage was not dissolved until July 3, 1944, when a decree for divorce was entered; that on March 21, 1942, when the plaintiff went through a marriage ceremony with the insured soldier, the plaintiff was the lawful wife of Walter A. Walker; and that after her divorce from the prior husband no marriage took place between the plaintiff and the insured soldier.

On these facts the trial court concluded, as a matter of law, that the marriage of plaintiff to the assured was void; and that plaintiff was not his widow.

The trial court recognized the presumption in favor of the validity of the marriage between the plaintiff and the insured soldier, but held that the presumption had been overcome by the evidence of plaintiff's prior subsisting marriage.

 We are not permitted to set aside the findings of fact of the trial court, unless they are clearly erroneous, and we are required to give due regard to the opportunity of the trial court to judge the credibility of the witnesses. Rule 52(a), Federal Rules of Civil Procedure. Findings of the trial court which are supported by the evidence or which are based on reasonable inferences drawn from the evidence are binding on this Court. United States v. Cold Metal Process Company, 6 Cir., 164 F.2d 754, 755; Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, etc., 5 Cir., 137 F. 2d 176.

The plaintiff contends that certain possibilities of the prior marriage being invalid or dissolved were not covered by the evidence, and that the intervening defendants had the burden of proving the invalidity of plaintiff's marriage to the assured. The plaintiff says that at the time of her marriage to the assured her prior marriage might not have been a valid subsisting marriage because the first husband might have been legally married to another at the time

of his marriage to plaintiff, or subsequent to his marriage to plaintiff, and prior to plaintiff's marriage to the assured, the first husband might have secured a divorce or have died. As against these possibilities there were the following admitted facts and evidence for the consideration of the trial court. On April 12, 1944, two years after her marriage to the assured, the plaintiff filed a suit for divorce against her first husband. In her complaint for divorce she alleged that on January 30, 1932 she "was *lawfully* joined in marriage" to the first husband, and that from that time "until on or about the 15th day of August, 1940" she lived and cohabited with him as his wife. In connection with her complaint for divorce, plaintiff filed an affidavit in which she said that the last known place of residence of her first husband was 507 Hobart Street, Washington, D. C. On June 27, 1944, in her divorce action, plaintiff also filed her affidavit stating that "said defendant, Walter A. Walker, *is* not in the military service of the United States." On the same day she testified in her divorce proceeding in answer to the question:

"Are you married to defendant, Walter A. Walker? Yes, I am."

She testified further that she separated from him on August 15, 1940, at which time he left her. In the same proceeding her sister testified that plaintiff separated from Walter A. Walker on August 15, 1940; that he left her; and that during the time they lived together as husband and wife she had an opportunity to visit them in their home. A third witness testified to the same date of separation.

 In the trial below plaintiff testified that she married Walter A. Walker in 1930, and that she separated from him in 1933; that she had lived together with the insured soldier twelve or thirteen days after they were married before he went into service. Plaintiff's counsel there stated that the Veterans' Administration asked the plaintiff to produce either divorce papers or a death certificate of the first husband, or in the alternative, a divorce decree from him and a remarriage to the deceased veteran before his death, and that she was unable to produce either. Plaintiff also testified

that she at one time heard her first husband was dead "until I got married again, I found out he wasn't", and it was then that she filed her suit for divorce. The trial court had the opportunity of seeing and hearing the plaintiff testify in the trial below, where her testimony was so at variance with her sworn statements and testimony in her divorce proceeding, and could only conclude that the variance could not have been the result of an honest mistake. The evidence considered as a whole fully justified the findings of the trial court.

The plaintiff relied heavily on the case of Hatfield v. United States, 2 Cir., 127 F. 2d 575, 577. In that decision the court pointed out that there was a New York statute which provided that such a second marriage was only "void from the time its nullity is declared by a court * * *." The court also referred to a later statute which declared such marriages absolutely void but said this later legislation did not operate retroactively. In that case the facts are not fully set out, but it is shown that there had been a separation of ten years from the first husband before the woman married the insured soldier, and that after the death of the insured soldier she married a third man. The case is distinguishable both upon the facts and upon the particular New York statute involved.

The judgment of the District Court is affirmed.