**WISCONSIN SCREW COMPANY,**
Plaintiff-Appellant,

v.

**FIREMAN'S FUND INSURANCE COMPANY,** Defendant-Appellee.

No. 13281.

United States Court of Appeals
Seventh Circuit.

Jan. 3, 1962.

Norman C. Skogstad, Martin J. Torphy, Milwaukee, Wis., J. M. Weisman, Racine, Wis., for appellant.

John P. Gorman, Chicago, Ill., Reginald W. Nelson, Milwaukee, Wis., Jerome H. Torshen, Clausen, Hirsh, Miller & Gorman, Chicago, Ill., Whyte, Hirschboeck, Minahan, Harding, & Harland, Milwaukee, Wis., for appellee.

Before KNOCH, CASTLE, and MAJOR, Circuit Judges.

CASTLE, Circuit Judge.

Wisconsin Screw Company, plaintiff-appellant, brought this diversity action in the District Court to recover $1,284,646.27 and interest on a fire insurance loss under three fire insurance policies issued in Wisconsin by Fireman's Fund Insurance Company, defendant-appellee. The policies aggregated a total of $1,300,000.00 of insurance with a ninety per cent co-insurance clause and covered the building and contents of plaintiff's screw machine products manufacturing plant located at Racine, Wisconsin.

The cause was tried to the court without a jury. After an extended trial the District Court filed an exhaustive and detailed opinion, made and entered its findings of fact and conclusions of law, and entered a judgment for the plaintiff which represents a recovery of $800,346.72. The plaintiff appealed and contends that the trial court erred in arriving at the amount of plaintiff's loss and in denying pre-judgment interest.

The main contested issues which emerge from plaintiff's appeal are:

(1) Whether the District Court applied the correct legal criteria in determining the amount of the fire loss.

(2) Whether the plaintiff was entitled to recover pre-judgment interest.

The major items destroyed or damaged by the fire were the building, the automatic screw machines and other machinery employed in the manufacturing process, and tooling. The tooling consisted of machine parts, tool holders, and cutting tools, sometimes referred to as perishable tooling. Loss or damage to these items make up the bulk of the total claim.

In our opinion the District Court's judgment order insofar as it reflects the valuation and the loss attributed to other items destroyed or damaged is the result of resolution of conflicting testimony with respect to the amount of depreciation or other factual issues. And, with respect to those issues the findings of the trial court have substantial support in the record. We are left with no definite or firm conviction that the trial court was mistaken. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746. We cannot say that those findings are clearly erroneous and therefore Rule 52 (a), Federal Rules of Civil Procedure (28 U.S.C.A.) precludes us from disturbing them. Advanced Methods, Inc. v. Grain Dealers Mutual Insurance Company, 7 Cir., 274 F.2d 634; Walker v. United States, 7 Cir., 180 F.2d 217, 219.

We turn to consideration of the trial court's disposition with respect to the major items and plaintiff's contention that the court erred in the criteria it applied in arriving at the monetary amount of the loss sustained by plaintiff because of destruction or damage to the machines, tooling and the building.

Each of the policies provided for indemnification from fire loss "to the extent of the actual cash value of the property at the time of loss. * * *" Plaintiff contends that this policy provision requires that such value be determined on the basis of replacement value new less depreciation, without reference to other factors. And plaintiff asserts that its witnesses arrived at their valuations and computations of resulting loss or damage by correct application of the replacement value new less depreciation formula. The defendant's evidence on machinery loss or damage is based on market value of the

machines at the time of the fire determined by reference to the used-machinery market, freight and installation charges as to machines destroyed, and the cost of cleaning and preserving partially damaged machines. The District Court found and concluded that the recoverable loss and damage sustained on the machinery item was in the sum of $316,982.50, the figure resulting from use of the market value basis employed by defendant's witnesses. We have examined the testimony relating to the market in used machinery in the light of plaintiff's contentions with respect thereto and conclude that the District Court is not clearly in error in finding, in effect, that the machinery involved was obtainable in the used-machinery market at the prices listed by defendant's witnesses.

With respect to the tooling the trial court rejected the loss figures as testified to and computed by the witnesses for each of the parties. But on the basis of all of the evidence relating to this item the court accepted the plaintiff's replacement value new figure less an average depreciation rate determined by the court. This average depreciation rate was arrived at by increasing the average depreciation rate on tooling disclosed by the testimony of plaintiff's witnesses by the difference between the overall rate of depreciation plaintiff applied to machinery and the average rate which would result as to the machinery value arrived at by defendant's witnesses computed by using plaintiff's replacement value new figure on machinery. This in effect made an adjustment in loss on tooling to compensate for under-depreciation the court found to exist in plaintiff's figures— equating the amount of under-depreciation to that which existed in the plaintiff's machinery loss figure by comparison with defendant's used-machinery market value figure. In view of the close relationship shown by the record between the machines and the tooling used with and complementing them we perceive no error in the court's disposition of the issue as to tooling loss or damage unless the use of the market value of the machines as a

factor in adjusting the depreciation was the use of a prohibited criteria.

We proceed therefore to consideration of the basic underlying issue as to whether the court erred in determining loss on the basis of market value rather than by reference to replacement value new less depreciation.

Plaintiff relies heavily upon our decision in Knuppel v. American Insurance Company, 7 Cir., 269 F.2d 163, a case involving fire loss on a restaurant-tavern building under an identical policy provision. Illinois law governed in Knuppel and we held that the trial court's conclusions of law correctly recognized that under a controlling Illinois decision (Smith for Use of Inter-Ocean Casualty Co. v. Allemannia Fire Insurance Co., 219 Ill.App. 506) "actual cash value" as used in the indemnity clause of a fire insurance policy "means reproduction value less depreciation for age". But the instant case must be decided with reference to the law of Wisconsin. And our comment in Knuppel distinguishing McAnarney v. Newark Fire Ins. Co., 247 N.Y. 176, 159 N.E. 902, 56 A.L.R. 1149, is of no aid to plaintiff here.

No case has been cited by the parties where the Wisconsin Supreme Court has had occasion to adjudicate the precise question here involved. Our own research has produced none. An examination of two Wisconsin cases where "actual cash value" of property was in question reveals that the court has approved consideration of other factors in ascertaining such value and has not limited the trier of the facts to consideration of replacement value new less depreciation. Engh v. Calvert Fire Insurance Company, 266 Wis. 419, 63 N.W.2d 831, 834, involved a collision loss under an automobile insurance policy which limited the insurer's liability to the "actual cash value" of the insured truck. Although it approved adoption by the trial court of the replacement cost new less depreciation formula for determining loss the Wisconsin court stated:

"The policy issued to the plaintiff by the defendant limited the insur-

er's liability to 'actual cash value' of the truck. The measure of liability in this type of situation is the difference between the value of the property immediately before the loss and its value immediately afterwards. The defendant contends that there is no competent proof in the record to establish the market value either before or after the loss. With this position we cannot agree. The defendant at the trial offered proof regarding such values. The adjuster, Doherty, as an expert, presented several bases of value of the tractor both before and after the collision. Probably the defendant now finds itself disappointed that the trial court did not adopt a measure more favorable to the defendant. *However, it was within the province of the trial court to adopt any of the measures which the defendant offered, —all of such being competent.*" (Emphasis supplied.)

See also: Cassel v. Newark Insurance Company, 274 Wis. 25, 79 N.W.2d 101, in which an instruction employing the fair market value test was approved.

We agree with the conclusion of the learned trial judge that the Wisconsin court has not announced any invariable test to be applied in the ascertainment of "actual cash value" within the meaning of a fire insurance policy indemnification clause and if called upon to prescribe such a test would find itself facing the same problem as was presented in Pinet v. New Hampshire Fire Insurance Co., 100 N.H. 346, 126 A.2d 262, 61 A.L.R.2d 706, where the court after first observing that the "actual cash value" clause in an insurance policy does not in itself establish any rule for determining the amount of loss but simply imposes a limitation upon the amount which may be recovered, and that the courts in some jurisdictions use fair market value as a test, others cost of replacement, stated:

"In this state the court has had no occasion to commit itself to either the fair-market-value test or the test of replacement cost in determining the actual cash value of the insured's property. See Huckins v. People's Mut. Fire Ins. Co., 31 N.H. 238; Wood v. Manufacturers & Merchants Mut. Insurance Co., 89 N.H. 213, 195 A. 667. However, we are impressed with what might be denominated a third rule which has received support in New York, Massachusetts and South Dakota. McAnarney v. Newark Fire Insurance Co., 247 N.Y. 176, 159 N.E. 902, 56 A.L.R. 1149; Kingsley v. Spofford, 298 Mass. 469, 11 N.E.2d 487; Lampe Market Co. v. Alliance Ins. Co., 71 S.D. 120, 22 N.W.2d 427. In these jurisdictions neither market value nor replacement cost is an exclusive test. Evidence of both market value and replacement cost with depreciation may be introduced as evidence of actual cash value. These jurisdictions stress the fact that variations in the types of property and the conditions under which they are destroyed prevent the adoption of any single test for all cases. The objective in these cases is to see that the insured should incur neither economic gain nor loss if he is adequately insured and suffers partial fire loss. See Howland, Depreciation and Partial Losses, Proc.A.B.A., Section of Insurance Law, pp. 90, 95 (1952).

"In adopting this third rule in this state, which has worked successfully elsewhere, we are fortified by the authoritative conclusions of Bonbright and Katz, Valuation of Property to Measure Fire Insurance Losses, 29 Col.L.Rev. 857, 899. 'In general we conclude that the opinion of the courts, especially of the appellate courts, have shown an increasing desire to make the measure of recovery for fire insurance losses correspond to the actual loss sustained by the insured in view of all the circumstances of the case. To put the matter in other words, the courts, when faced with a choice between applying some standardized rigid rule such as replacement cost minus

physical depreciation or of adopting some more flexible test which can be modified in such a way as to accord more nearly with the principle of indemnity, have generally preferred the latter alternative even though it has involved the sacrifice of administrative convenience and of simplicity.' See also, I Bonbright, Valuation of Property, 406.

"In the last analysis the 'actual cash value' of the plaintiff's loss must be expressed in terms of money which is a matter of opinion. The trier of fact in determining that question may receive evidence whether there is a fair market value or replacement cost and in either case what it may be. Both fair market value and replacement cost are permissible standards for determining fire losses but they are standards and not shackles."

We had occasion to observe in Shackleton v. Food Machinery and Chemical Corp., 7 Cir., 279 F.2d 919, 922 that where, in a diversity case, there is no compelling indication of the local rule the considered view of the District Judge will be accepted as to doubtful questions of local law. Cf. Mutual Benefit Health & Accident Ass'n v. Cohen, 8 Cir., 194 F.2d 232, 241. We conclude that the District Court did not err in applying the criteria it did in determining the loss or damage to the machines and tooling.

The insured building consisted of one main two-story structure and additions thereto, designated in the policies as four buildings. The main two-story brick structure was built in the late 1890's and in 1919 adapted to plaintiff's operations by bolstering the floors of the second floor. The age of the "West building" addition was estimated as between fifteen and twenty years and wiring in another portion estimated as fifteen years old. Both parties submitted testimony on the cost of reconstruction of the destroyed sections—the main structure and the west and north additions—and the repair of the salvageable additions, less depreciation in each instance. They differed as to the rate of depreciation to be applied. The trial court accepted the defendant's cost of rebuilding estimate but adjusted it to cover repairs to floor slabs and to eliminate power wiring, allowance for loss of which was made under another item, and found a depreciation rate of 50 per cent reasonable. On the record before us we cannot say the District Court's findings and conclusions on the building loss embrace error either in fact or in law. The depreciation arrived at was within the range of conflicting testimony and an acceptable criteria was applied in determining loss.

The District Court made no allowance of pre-judgment interest. Plaintiff contends this was error and relies on Olson v. Herman Farmers Mutual Ins. Co., 187 Wis. 15, 203 N.W. 743 as representing the application of Wisconsin law concerning the allowance of pre-judgment interest on unliquidated claims to a fire insurance loss. But in Olson the amount of the loss was not in dispute, only liability under the policy. There are situations where Wisconsin law permits recovery of pre-judgment interest on unliquidated damages or claims. Laycock v. Parker, 103 Wis. 161, 79 N.W. 327; J. I. Case Plow Works v. Niles & Scott Co., 107 Wis. 9, 82 N.W. 568; Necedah Mfg. Corp. v. Juneau County, 206 Wis. 316, 237 N.W. 277, 240 N.W. 405, 96 A.L.R. 4. But the cited cases restrict such allowance to instances where the pecuniary amounts due are "liquidable or measurable in money with reasonable certainty"; where there is a "reasonably certain standard of measurement by the correct application of which one can ascertain the amount he owes"; and where the damages although wholly unliquidated "may be fixed by known and reasonably certain market values or other definite standards". Here the nature of the property, the numerous and different categories of items involved, and the varying extent of damage, all combined to make ascertainment of values and resulting loss a difficult task. The amount of loss was not readily determinable. Maslow Cooperage Corp. v.

Weeks Pickle Co., 270 Wis. 179, 192, 70 N.W.2d 577, 584. Moreover, the policies infer contractual intent that the payment of loss becomes due only after the amount either has been agreed upon or actually determined in a manner binding on the parties. Each of the policies, in keeping with the standard fire policy provisions of the Wisconsin statute, Sec. 203.01, provided that the amount of loss is payable sixty days after proof of loss is received by the defendant *and* "ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing" or such loss is ascertained by an award of appraisers selected in accordance with the policy. On the facts and circumstances disclosed by the record we are of the opinion that the District Court did not err in denying prejudgment interest.

The judgment order of the District Court is affirmed.

Affirmed.