ENGH, Respondent, vs. CALVERT FIRE INSURANCE COMPANY, Appellant.

*March 4—April 6, 1954.*

420

For the appellant there was a brief and oral argument by *William F. Double* of Milwaukee.

For the respondent there was a brief and oral argument by *Ruben J. Cain* of Milwaukee.

STEINLE, J. · The plaintiff, Joseph Engh, purchased the insured vehicle from Gundersen Motor Company in Milwaukee on May 9, 1951, for $5,674.56. Financing charges and insurance premiums brought the total time price for the tractor to $6,615.80, with payments on balance due in twenty-four months and $195.99 monthly. The plaintiff used the vehicle for hauling purposes under a contract with Prefab Transit Company. At the time of the collision plaintiff had operated the truck for about 20,000 miles.

On August 29, 1951, while Engh was driving the tractor near Pittsburgh and was pulling a heavy, loaded trailer, the brakes failed and the tractor and trailer crashed into a tree. After the collision Engh caused the tractor and trailer to be towed to a near-by garage. At that place he telephoned to the Pittsburgh office of the Commercial Credit Company, which held the conditional sales contract on the trailer and reported the collision and loss of the wrecked tractor to the finance company and to the insurer's representative. He was told that the insurer would inspect the damaged truck. Engh returned to Milwaukee. There, James Doherty, an adjuster for the insurer, obtained a written statement from Engh in the form of an accident report. Discussion was had then and there between Engh and Doherty as to the possible repair of the truck, Doherty told Engh that he would be

obliged to await papers from Pittsburgh before giving an answer. Engh phoned Doherty several times thereafter to ascertain what was going to be done. Doherty advised Engh to furnish a proof of loss. On October 20, 1951, Engh sent a written proof of loss to the insurer. He also sent a letter nominating a loss appraiser. The policy of insurance contained a condition that if the insured and the company failed to agree as to the amount of loss, each party could select a competent and disinterested appraiser, who together with an umpire, selected by the appraisers, were to appraise the loss and make award. Doherty told Engh that the truck was a total wreck; that the company "took it as salvage," and estimated the salvage value at $700. On May 12, 1952, Three Rivers Motors Company of Wilkinsburg, Pennsylvania, wrote to Engh that, "the truck was removed from our garage by Hudecek Motor Company of Allegheny River boulevard, Oakmont, Pennsylvania, shortly after the Insurance Company negotiated for its release." Engh testified that Doherty had told him four or five different times, "that the truck belongs to the Insurance Company now." Engh, at no time wished or asked to have the wrecked car repaired. However, an estimated cost of repair of $4,731.63 was furnished by Three Rivers Motors Company of Wilkinsburg, Pennsylvania, to the defendant.

At Adjuster Doherty's suggestion, Engh in September, 1951, inquired from Gundersen Motor Company and also Shallock Ford Company as to the cost of a new truck. Forty-nine hundred dollars ($4,900) was the price indicated by both of said dealers. Doherty offered to adjust the loss on such basis less $100 deductible item per policy and $50 towing expense, or a total of $4,750. Engh declined that offer. Appearing of record is a written offer by Hudecek Motor Company of Oakmont, Pennsylvania, addressed to Calvert Fire Insurance Company (on Insurance Company printed form) dated November 1, 1951, offering cash bid on salvage

of tractor in the amount of $750. While Doherty at the trial admitted that in September, 1951, he had agreed on behalf of the Insurance Company in his representative capacity to retain the salvage for which $700 had been offered, nevertheless later, after Engh had declined Doherty's offer, the adjuster told Engh that the claim of salvage would be his responsibility from then on. The plaintiff did not transfer certificate of title to the defendant, nor did the defendant or the finance company ever demand it. Engh denied that Doherty had told him that Engh would be required to pay for the storage. On October 30, 1952, almost fourteen months after the loss, the defendant notified the plaintiff that it had received notice that the truck was to be sold at public sale for towing and storage charges.

When the plaintiff, Joseph Engh, purchased the truck from Gundersen Motor Company in Milwaukee, that agency handled the financing arrangement of the truck through Commercial Credit Company and the insurance coverage through Calvert Fire Insurance Company. Engh did not deal personally with representatives of those companies either as to financing the truck or insuring it. Before he bought the truck Engh informed the sales manager and also a salesman of Gundersen Motor Company that he intended to use the truck in long-distance hauling in the business of transporting Prefab homes. A rider on the insurance policy provided that:

". . . it is warranted by the insured that no regular or frequent trips of commercial vehicles described in such policy are or will be made during the policy period to any location beyond a 150-mile radius from the limits of the city or town of principal garaging of such vehicles."

Engh's tractor had been garaged in Milwaukee. When Engh discovered the distance-restriction rider in the policy he personally went to Gundersen Motor Company and contacted Lee S. McBride, the salesman who had handled his

deal. Then and there representatives of Gundersen Motor Company telephoned to Commercial Credit Company requesting the elimination of the 150-mile-radius indorsement. However, there is no reference in the record that the finance company or the Insurance Company ever thereafter consented in writing to such change of the policy. Engh, from the date he acquired the truck until the collision, made two trips to Michigan and two to Iowa, and several to Pittsburgh, all of which places were more than 150 miles from Milwaukee. The trial court found, however, that such trips were not "regular or frequent" within the terminology of the limitation-of-use indorsement of the policy.

In his memorandum decision, the learned trial court, "sustains and accepts as true and just the amount which plaintiff is entitled to recover as accurately and correctly computed in the briefs submitted by his counsel with interest thereon at the rate of five (5) per cent per annum." Briefs submitted by plaintiff's counsel are not part of the record here. In the findings of fact the trial court repeated the quoted phraseology in the memorandum decision and thereafter found:

". . . which amount was accurately computed to be the sum of $5,334, less $100 deductible, as provided in the policy, or the sum of $5,234, together with interest from November 20, 1951, to June 30, 1953, or interest in the sum of $421.67, making a total judgment of $5,655.67 together with costs and attorneys' fees in the amount of $122.18, . . ."

The record is barren of detail showing how the figure $5,334 in the lower court's findings of fact was arrived at. Lack of findings is not necessarily reversible error although the ultimate facts should be found. With reference to this item we are called upon to determine whether the trial court reached a result which the evidence would sustain had specific findings been made. *Schmoldt v. Loper* (1921), 174 Wis. 152, 153, 182 N. W. 728.

James Doherty, the defendant's adjuster, testified for the defense at the trial and was qualified as an expert witness. Mr. Doherty testified that a truck such as Mr. Engh owned and drove depreciated at the rate of 25 per cent per year. He also testified that in his work as an appraiser he acquired ability to determine depreciation on a mileage basis. He gave as his opinion that a fair depreciation on a 1951 Ford F-8 truck such as Mr. Engh drove would be three to five cents per mile. He also stated that the salvage value of the wrecked truck had been appraised,—he imagined by the adjuster in Pittsburgh,—and that his company had received an offer of $750 from salvage buyers in Pittsburgh for the wreckage.

The testimony of the witness Doherty was competent and the defense is bound by it. The truck before the collision had only been operated for about three months. The cost price was $5,674.56. Doherty testified that such truck would depreciate at the rate of 25 per cent per year. On that basis the depreciation amounts to about $340 for three months. It seems to us that it is as fair to compute depreciation on a prorata monthly basis as it would be on a straight-mileage basis under the circumstances of this case. A deduction of $340 depreciation (on a monthly basis) from the cost price would bring the value within the realm of the court's computation exclusive of any allowance for salvage.

In an action for damages brought upon a contract of insurance, the provisions of the contract govern the measure of recovery rather than any rules applicable to cases of tort. *Housner v. Baltimore-American Ins. Co.* (1931), 205 Wis. 23, 236 N. W. 546.

The policy issued to the plaintiff by the defendant limited the insurer's liability to "actual cash value" of the truck. The measure of liability in this type of situation is the difference between the value of the property immediately before the loss and its value immediately afterward. The defendant con-

tends that there is no competent proof in the record to establish the market value either before or after the loss. With this position we cannot agree. The defendant at the trial offered proof regarding such values. The adjuster, Doherty, as an expert, presented several bases of value of the tractor both before and after the collision. Probably the defendant now finds itself disappointed that the trial court did not adopt a measure more favorable to the defendant. However, it was within the province of the trial court to adopt any of the measures which the defendant offered,—all of such being competent. In view of the testimony in this record as to the value of the truck immediately before the collision, we are constrained to hold that the trial court's determination respecting same was proper.

It must be conceded that the trial court's computation as we have herein analyzed it does not allow to the Insurance Company a deduction for the salvage, that is, the value of the wreckage. However, in view of the record, we cannot find that the trial court disregarded consideration of that item. It is very likely that in its decision of this case the trial court was of the opinion that the Insurance Company had taken over the wreckage, treated it as its own, and had the benefit of doing with it whatever it desired. Certainly there is an abundance of testimony justifying a finding to that effect.

Engh did not abandon the wreckage. He was advised by Doherty that the Insurance Company had taken over the salvage. Doherty told Engh that, "the truck [wreckage] belongs to the Insurance Company now." Obviously, Engh concurred in such arrangement. At least he did not object to it. The carrier exercised dominion over the wreckage when, without consulting Engh, it negotiated for its release from Three Rivers Motors Company of Wilkinsburg, Pennsylvania. The carrier had been offered $750 for the salvage. There was nothing to have prevented it from accepting such .

offer. Manifestly, in view of such record, it would be unjust and unreasonable not to find that the Insurance Company had not only determined to take over the wreckage but in fact had appropriated the wreckage for its own use with at least the implied consent of Engh. In the interests of fairness and the promotion of justice as between these parties, the trial court may well have found that on the record the Insurance Company at the trial was estopped from claiming or being entitled to a deduction for salvage since it already had received the benefit of same when it took it over and was at liberty to do with it as it saw fit. To charge Engh with the value of the salvage under the circumstances disclosed by this record would be most inequitable. The trial court's conclusion as to the damage is supported by the evidence.

The defendant contends that the trial court should have found that, on the admitted trips taken by the plaintiff outside the 150-mile radius from Milwaukee, he violated his warranty and that the breach was the cause of the loss in question. It was the regular and frequent use of the truck outside the 150-mile radius that was forbidden under the terms of the policy as distinguished from its casual or incidental use. In *Bruins v. Anderson* (1951), 73 S. D. 620, 47 N. W. (2d) 493, it was held that provisions of an automobile liability policy, prohibiting the regular and frequent use of the automobile beyond the area within a 50-mile radius of limits of the city or town where the automobile is principally garaged, would not relieve the insurer of liability because the vehicle was casually or incidentally used beyond such radius even though at the time of the accident the vehicle was beyond such radius.

The trial court's finding to the effect that the defendant failed to establish its contention that the trips taken by the plaintiff were regular or frequent is sustained by the evi-

428

dence. Under well-established rules, that finding may not be disturbed.

The trial court made no finding as to the plaintiff's claim that he ordered from Gundersen Motor Company a change to a broader area. In view of the fact that the judgment is supported by the evidence we do not deem it necessary to decide that point.

*By the Court.*—Judgment and order affirmed.