DOELGER & KIRSTEN, INC., Respondent, v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, Appellant.

*No. 230. Argued April 2, 1969.—Decided May 6, 1969.*
(Also reported in 167 N. W. 2d 198.)

For the appellant there were briefs by *Robert W. Wolfe* and *Wolfe, O'Leary, Kenney & Wolfe,* all of Milwaukee, and oral argument by *Robert W. Wolfe*.

For the respondent there was a brief and oral argument by *Herbert A. Eggie* of Milwaukee.

ROBERT W. HANSEN, J. What is the proper measuring stick to use in determining the "actual cash value" of wooden patterns of uncertain age, apparently more than thirty years old, last used in 1958 or 1959 and usable only for the producing of castings for alligator shears, an item of heavy industrial equipment for which there no longer seems to be much public demand?

Plaintiff contends that the proper measuring stick is a replacement cost. Evidence from an expert pattern-maker was offered that the cost of reproduction of the destroyed patterns was $12,100. Such cost of reproduction, the plaintiff spiritedly contends, is the sole test of value.

Defendant counters that the measuring stick to be used is that of present market value, actually contending that alligator shears, and consequently patterns used to make them, are obsolete and of no value at all. It is conceded that the patterns had not been used since 1956, and were moved to the barn for storage in 1963. The bottom dropped out of the alligator shears market in the midfifties with the development of the guillotine shears, a new and improved type of cutting machine. As background it should be mentioned that we deal here with a piece of expensive equipment. An alligator shears is no scissors to remove warts from crocodiles. One such shears costs $30,000. At the peak of demand, orders came in only two, three or four times a year.

By the replacement test plaintiff would get $12,100. By the present market value test, plaintiff would get nothing or very near to that. The trial court adopted the measuring stick of replacement cost, minus physical depreciation and minus obsolescence. This followed the reasoning of Judge ROBERT E. TEHAN, United States District Judge for the Eastern District of Wisconsin in *Wisconsin Screw Co. v. Firemen's Fund Ins. Co.*[1]

This is in accord with the opinions of experts in valuation of property.

"For example, in the case of used patterns, molds, and designs used as equipment by a manufacturer it has been held that their replacement cost new is not a fair test and that their obsolescence as well as their physical depreciation must be taken into account." [2]

Applied to the type of equipment here involved and the type of situation here presented, this appears to be a common sense approach to determining present "actual cash value." In the absence of any evidence as to physical depreciation, the trial court made no deduction for the attrition of the aging process, holding that to do so would be "pure speculation." Giving weight both to evidence as to absence of orders and the presence of continuing inquiries as to availability of alligator shears, the trial court found evidence of "substantial obsolescence." On this record it was for the trial court to determine whether the word "obsolete" or the word "obsolescent" properly described the patterns involved. Likewise, it was for the trial court to determine the degree of obsolescence, if the equipment was found to have some value rather than no value.

Admittedly, this was no easy assignment. Under the fact situation here presented, the court could not be ex-

---

[1] (D. C. Wis. 1961), 193 Fed. Supp. 96, affirmed (1962), 297 Fed. 2d 697.

[2] 1 Bonbright, *Valuation of Property*, 383.

pected to ascertain the "actual cash value" with exact mathematical precision. It was for the trier of fact to set the damages at a reasonable amount, using an acceptable measuring stick.[3] This is what he did.

Perhaps as a footnote only, we add the warning that sustaining the trial judge here is not laying down an invariable test to be applied in ascertaining "actual cash value" in all fire insurance cases. Actually, this court has consistently followed what has been termed the "broad evidence rule" giving considerable leeway and latitude to the trier of facts. In practice, this broad rule gives to the trial forum the right to consider in a given case all facts reasonably tending to throw light upon the subject.[4] In a post-Volstead Act case involving the destruction of buildings designed and used for the manufacture of malt used in the brewing of beer, the New York state appellate court well stated this "broad evidence rule:"

"Where insured buildings have been destroyed, the trier of fact may, and should, call to its aid, in order to effectuate complete indemnity, every fact and circumstance which would logically tend to the formation of a correct estimate of the loss. It may consider original cost and cost of reproduction; the opinions upon value given by qualified witnesses; the declarations against interest which may have been made by the assured; the gainful uses to which the buildings might have been put; as well

---

[3] *See White v. Benkowski* (1967), 37 Wis. 2d 285, 155 N. W. 2d 74.

[4] "The defendant contends that there is no competent proof in the record to establish the market value either before or after the loss. With this position we cannot agree. . . . The adjuster, Doherty, as an expert, presented several bases of value of the tractor both before and after the collision. Probably the defendant now finds itself disappointed that the trial court did not adopt a measure more favorable to the defendant. However, it was within the province of the trial court to adopt any of the measures which the defendant offered,—all of such being competent." *Engh v. Calvert Fire Ins. Co.* (1954), 266 Wis. 419, 425, 63 N. E. 2d 831.

as any other fact reasonably tending to throw light upon the subject." [5]

Under the "broad evidence rule," we need not find the route traveled by the trier of fact in this case to be the only route that could have been traveled. We need only to find it a proper and acceptable one. This we do. That both parties are outraged by the result reached may be some reassurance that the trial court found and followed a via media between two extremes.

Defendant claims error because a certified public accountant was permitted to testify as an expert that patterns would be carried on a company's books at replacement cost minus depreciation only, but not permitted to testify as to the present "actual cash value" of the patterns. It seems obvious that the witness was permitted to testify in the area of his expertise and competency, and not permitted to testify in an area beyond his competence. In any event, the area of competency of an expert witness is generally left to the discretion of the trial court. [6]

We find no misuse of trial court discretion here, certainly no basis for finding an abuse of discretion.

Defendant further claims that certain misrepresentations by plaintiff voided the policy. The representations relied upon relate to information as to the locations of the patterns and the valuation of patterns at various locations. It appears that on September 26, 1963, the insurance agent with whom plaintiff dealt was told by plaintiff that patterns stored at the Kirsten barn were worth $3,500. This information was given after the policy

---

[5] *McAnarney v. Newark Fire Ins. Co.* (1928), 247 N. Y. 176, 184, 159 N. E. 902.

[6] "The question of whether a witness possesses sufficient knowledge to qualify as an expert is generally one for the trial court, and unless it appears that in its determination the court is guilty of an abuse of discretion, the court's ruling will stand." *Drott Tractor Co. v. Kehrein* (1957), 275 Wis. 320, 327, 81 N. W. 2d 500.

went into effect. There is no indication in the policy that its issuance depended upon the location of the patterns covered. Actually, the policy provided that the company insured patterns in any location up to $10,000 without demanding notification of the location thereof.

As the trial court pointed out, the common-law doctrine of misrepresentation in the law of insurance is governed in this state by sec. 209.06, Stats., which specifies that no representation shall be deemed material or defeat or avoid the policy ". . . unless such statement, representation or warranty was false and made with intent to deceive, or unless the matter misrepresented or made a warranty increased the risk or contributed to the loss." [7] The trial court found that the representations involved were not made with intent to deceive, did not increase the risk beyond that contemplated by the company in issuing the policy, and did not contribute to the loss. We agree with the trial court.

*By the Court.*—Judgment affirmed.

---

[7] Sec. 209.06. *See Polar Mfg. Co. v. Integrity Mut. Ins. Co.* (1959), 7 Wis. 2d 443, 446, 96 N. W. 2d 822. *See also* 7 Couch, *Insurance* 2d, p. 23.