In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 23-2282 and 23-2354

MARGRIT MEIER, doing business as HARTLAND INN,

*Plaintiff-Appellant, Cross-Appellee,*

*v.*

WADENA INSURANCE COMPANY,

*Defendant-Appellee, Cross-Appellant.*

_____

Appeals from the United States District Court for the
Eastern District of Wisconsin.
No. 2:23-cv-00158-BHL — **Brett H. Ludwig**, *Judge.*

_____

ARGUED FEBRUARY 8, 2024 — DECIDED MARCH 8, 2024

_____

Before EASTERBROOK, SCUDDER, and ST. EVE, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Margrit Meier appeals the district court's dismissal of state law claims against Wadena Insurance Company arising out of coverage requests following a fire that destroyed her restaurant in Hartland, Wisconsin. Interpreting the terms of the commercial property insurance policy, the district court held Meier to her choice and agreement to resolve a portion of the coverage dispute through an appraisal process resembling arbitration. From there the

district court saw nothing problematic about the appraisal process or its outcome. We agree and affirm.

## I

## A

After a fire caused extensive damage to the Hartland Inn in June 2019, the owner of the building, Margrit Meier, submitted a coverage request to Wadena Insurance Company. The parties begin from the common point of agreement that the policy entitled Meier to the "actual cash value" of the Hartland Inn at the time of the fire, subject to the policy's overall coverage limit of approximately $1.1 million. But the policy does not define "actual cash value," and the parties disagree about how to calculate it.

Wadena first paid Meier $775,000 on her claim. The company explained in a letter that in accordance with Wisconsin law, it had calculated actual cash value using a method called the "Broad Evidence Rule," which, as its name implies, permits an insurer to consider a variety of relevant evidence in estimating the value of the covered property at the time of the loss. See *Doelger & Kirsten, Inc. v. Nat'l Union Fire Ins. Co.*, 167 N.W.2d 198, 200 (Wis. 1969) (describing the Broad Evidence Rule as "giv[ing] to the trial forum the right to consider in a given case all facts reasonably tending to throw light upon the subject"). Wadena averaged the "assessed value, sales approach value, cost approach value[,] and actual cost value" to produce the actual cash value estimate for the Hartland Inn.

Displeased by her recovery, Meier hired a third-party adjuster to provide its own estimate. Meier's adjuster concluded that the actual cash value of the building exceeded the insurance limit of $1.1 million. Upon learning of this estimate,

Wadena increased its own estimate of Meier's covered loss and paid her an additional $60,135.79, resulting in a total policy coverage of $845,135.79.

Still unsatisfied, Meier invoked the policy's panel appraisal option:

> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

After the parties proposed their respective appraisers, Meier attempted to short-circuit the appraisal process by filing suit in federal court in Milwaukee. See *Meier v. Wadena Ins. Co.*, 2021 WL 3679614 (E.D. Wis. Aug. 19, 2021). The district court dismissed the action, pointing to Meier's prior choice to resolve the coverage dispute outside of court and ordering her to complete the appraisal proceeding before a neutral umpire. See *id.* at *2.

The appraisal process culminated in the umpire arriving at an independent estimate of the building's actual cash value. Applying the Broad Evidence Rule, the umpire computed the recovery amount by averaging a market valuation, cost approach valuation, tax assessment, the Wadena appraiser's valuation, a repair estimate by Meier's appraiser, and a

second repair estimate to reach an actual cash value of $939,136.58. Wadena's appraiser agreed with that estimate—making the amount "binding"—so the insurer increased its coverage payment to match the umpire's determination.

Meier then filed a second lawsuit in Wisconsin state court, naming both Wadena and the umpire as defendants. She alleged breach of contract and bad faith and sought to set aside the appraisal award as invalid under state law. After the Wisconsin court dismissed the umpire, Wadena invoked federal diversity jurisdiction and removed the action to the Eastern District of Wisconsin. See 28 U.S.C. §§ 1332(a), 1441(b).

B

Wadena moved to dismiss, contending that Meier's claims failed because she had agreed to resolve the coverage dispute through the appraisal process. The district court agreed and dismissed the action, observing that Wadena "did precisely what it undertook to do": it complied with the alternative dispute resolution process and paid out the binding award. From there the district court added that nothing in either Wisconsin law or the policy prohibited use of the Broad Evidence Rule to determine the actual cash value of the Hartland Inn. The district court later denied Wadena's motion for sanctions under Federal Rule of Civil Procedure 11, rejecting the company's argument that Meier's state law claims were frivolous.

Meier now appeals the dismissal of her breach of contract and other state law claims, and Wadena cross-appeals the denial of its motion for sanctions.

## II

### A

Wisconsin public policy favors freedom of contract—the idea "that individuals should have the power to govern their own affairs without governmental interference." *Merten v. Nathan*, 321 N.W.2d 173, 177 (Wis. 1982). To protect this freedom, courts aim to "ensur[e] that promises will be performed," thereby preserving "justifiable expectations and the security of transactions." *Id.* The contracting parties are "responsible for evaluating the obligations [they] take[] on before entering into [an] agreement." *Farmers Auto. Ins. Ass'n v. Union Pac. Ry. Co.*, 768 N.W.2d 596, 606 (Wis. 2009).

The Wisconsin Supreme Court has emphasized that when parties to an insurance policy agree to use an appraisal process as a means of alternative dispute resolution, Wisconsin law backs that choice. See *id.* at 607. Indeed, "[t]he obvious point of contracting for an appraisal process is to keep a jury or court out of that decision." *Id.* Appraisals "promote finality, are time and cost-efficient, and place a difficult factual question—the replacement value of an item—into the hands of those best-equipped to answer that question." *Id.* The Wisconsin Supreme Court has explained that for these reasons appraisal awards should be treated as "presumptively valid." *Id.*

An award may be set aside under limited circumstances—"upon the showing of fraud, bad faith, a material mistake, or a lack of understanding or completion of the contractually assigned task." *Id.* (citing *Dechant v. Globe & Rutgers Fire Ins. Co.*, 217 N.W. 322, 322 (Wis. 1928)). Regarding the last exception, the Wisconsin Supreme Court has cautioned that "[t]he

court's role is not to determine whether the third party experts accurately valued the item (as if the court itself could do [a] better job), but whether the third party experts understood and carried out the contractually assigned task." *Id.* at 607.

B

Meier insists that the appraisal award is invalid because the umpire did not understand the contractually assigned task to calculate the actual cash value of the Hartland Inn. We take her argument to be that the policy prohibited the application of the Broad Evidence Rule to calculate actual cash value—that the term "actual cash value" as understood in its "common and ordinary" sense prohibits use of the Rule when the policy leaves the term undefined. See *Danbeck v. Am. Family Mut. Ins. Co.*, 629 N.W.2d 150, 153 (Wis. 2001) (stating the foundational principle that "[t]he words of an insurance policy are given their common and ordinary meaning").

That cannot be right. The Wisconsin Supreme Court has (at least) twice reached the opposite conclusion, explaining that an insurer may use the Broad Evidence Rule to calculate actual cash value when the insurance contract does not define the term. See *Doelger*, 167 N.W.2d at 199–200 (identifying the Broad Evidence Rule as "consistently" applied in determining "actual cash value" in fire insurance cases); see also *Engh v. Calvert Fire Ins. Co.*, 63 N.W.2d 831, 834 (Wis. 1954) (allowing any competent evidence as to the value of a salvaged car for purposes of calculating "actual cash value").

Undeterred by the Wisconsin Supreme Court's endorsements of the Broad Evidence Rule in *Doelger* and *Engh*, Meier urges us to wade into Wisconsin insurance law and the nuances of the Rule. She invokes *Coppins v. Allstate Indemnity Co.*,

857 N.W.2d 896 (Wis. Ct. App. 2014), for the proposition that Wisconsin law altogether prohibits application of the Rule where, as here, the policy does not define the term "actual cash value." We decline the invitation.

As the district court explained, *Coppins* did not declare use of the Broad Evidence Rule unlawful in calculating "actual cash value" under any and all such policies. The *Coppins* court held more narrowly that appraisers must use a logical, predictable methodology to calculate "actual cash value" consistent with both the language of the underlying policy and "commonly-accepted definitions" of the term. See *id.* at 905; see also *Doelger*, 167 N.W.2d at 200 (listing "opinions upon value given by qualified witnesses" as an acceptable category of evidence under the Broad Evidence Rule (quoting *McAnarney v. Newark Fire Ins. Co.*, 159 N.E. 902, 905 (N.Y. 1928))). The appraisers in *Coppins* misapplied the Rule in an attempt to disguise a "free-for-all" approach to calculating actual cash value, in the process disregarding policy terms suggesting that actual cash value would be determined as "replacement cost less depreciation." See 875 N.W.2d at 905.

Meier overreads *Coppins*. Rather than invoking the case to explain how the umpire's application of the Broad Evidence Rule was incoherent or violated the specific terms of her policy, she contends that *Coppins* altogether prohibited the umpire from using the Rule. But *Coppins*, in short, was a case about the manner in which the appraisers applied the Broad Evidence Rule under the terms of a specific policy that differed in material ways from the policy here. *Coppins* was not a case that disturbed the Wisconsin Supreme Court's prior holding in *Doelger* approving use of the Rule generally.

Our role as a federal court is to decide the case before us and not to sort out uncertainties about applications of the Broad Evidence Rule at the margins. That work remains entrusted to Wisconsin courts, including the state's Supreme Court. It is enough for us to conclude that Wadena complied with a dispute resolution process that resulted in the payment of a valid and binding award.

## C

We can make short work of Meier's breach of contract claim. She seems to argue that Wadena breached the policy by paying a coverage amount based on a contractually prohibited method—the Broad Evidence Rule. But we have explained why that view is a non-starter. The rest is simple. The parties agreed that in the event of a dispute about the actual cash value of the building, either party could invoke panel appraisal as a means of resolving the coverage dispute. Indeed, Meier herself invoked that clause, and the appraisal proceeded accordingly, with Wadena paying out a final binding award equal to approximately 85% of the coverage limit. There was neither breach of contract nor bad faith here.

## D

Finally, we affirm the district court's denial of Wadena's motion for sanctions under Federal Rule of Civil Procedure 11. Meier's challenge to the appraisal award may have been a long shot, anchored as it was in a stretched reading of the Wisconsin Court of Appeals's decision in *Coppins*. But litigation long shots and frivolous claims are not the same. We see no abuse of discretion in the district court's preference for closing the book on this litigation without an accompanying imposition of sanctions.

For these reasons, we AFFIRM.