WILLIAM M. KINGSLEY, trustee, *vs.* ETTA F. SPOFFORD, trustee, & others.

Essex.     December 8, 1936. — November 30, 1937.

Present: RUGG, C.J., FIELD, DONAHUE, & QUA, JJ.

*Trust*, Upkeep of real estate. *Insurance*, Fire: amount of recovery for loss. *Value*. *Devise and Legacy*, Capital and income. *Probate Court*, Appeal, Requests and rulings. *Words*, "Actual value."

In the circumstances a trustee under a will exercised a sound discretion in paying premiums for fire insurance upon buildings based on replacement cost less depreciation as valuation although such valuation was at least twice the market value of the buildings.

The limitation of recovery under a fire insurance policy to the "actual value" of the insured property by G. L. (Ter. Ed.) c. 175, § 96, does not limit recovery to the "market value."

The provision in § 95 of G. L. (Ter. Ed.) c. 175, prohibiting a fire insurance company issuing a policy in excess of "the fair value of the prop-

erty" was not a limitation upon the amount recoverable under a policy although it was issued in violation thereof.

Where it was the primary purpose of a testator in establishing a trust to preserve certain real estate for his family, remaindermen, the trustee was justified in carrying reasonable and not excessive fire insurance on the property even though the premiums thereon, paid from income, were so heavy that the life beneficiaries did not receive as much income as a trust not founded with such a primary purpose normally would produce.

The failure of a probate judge to give correct requested rulings of law at the hearing and allowance of a trustee's account was not ground for reversal on appeal from a decree allowing the account.

PETITION for the allowance of a trustee's account in the Probate Court for the county of Essex.

The petition was heard by *Dow,* J. From a decree allowing it, certain respondents appealed.

*M. Rosenthal,* for the appellants.

*W. A. Rollins,* for the petitioner.

FIELD, J. This is an appeal from a decree of the Probate Court for the county of Essex allowing the substituted final account for the period from September 8, 1928, to July 6, 1935, of the sole surviving trustee under the fifth clause of the will of Paul Nelson Spofford, late of Portchester, New York — filed and recorded in said court as a foreign will — for the benefit of Joseph Eugene Spofford and Paul Cecil Spofford, life beneficiaries, and others. The appellants are these life beneficiaries and the succeeding trustee. There is a report of material facts, but the evidence is not reported. The judge also filed a document entitled "Rulings."

The appellants object only to items in the account for premiums paid for fire insurance on buildings on the premises held in trust under said fifth clause of the will,* and

---

* The will of the testator is set out in full in the report of material facts. By the fifth clause thereof the testator devised to trustees "My land known as 'Bald Pate' and lands adjoining thereto hereinafter in this article described in Georgetown, and *Boxfoed,* in said Commonwealth with the Inn thereon, the bungalow, stable, and other buildings and all my furniture therein [here follows a description of the land devised] . . . to hold, manage, and maintain the same and from time to time to lease the Bald Pate Inn, and any or all the foregoing trust lands immediately adjacent thereto in the discretion of the trustee for the time being hereunder for an Inn in a manner similar to that under which said property has been carried on," and to pay the net income thereof to or for the benefit of the named life beneficiaries and for a

an item for premiums paid for rent insurance amounting to $168. The aggregate amount paid for fire insurance premiums — including premiums for fire insurance on furniture, obviously a small amount and not now objected to — was $5,940, of which $240 was charged against principal. The appellants rightly do not contend that this was not a proper case for insurance of the buildings against fire for a reasonable amount at the expense of the trust. See Am. Law Inst. Restatement: Trusts, § 176, Comment (b). Ordinarily the cost of such insurance, like other current expenses of maintaining the real estate, is chargeable to income. *Mahoney* v. *Kearins*, 282 Mass. 130, 138. The appellants, however, do not contend that any of the premiums paid for fire insurance were improperly charged in the account either to income or to principal if the premiums were not excessive in amount. The only contention on this branch of the case is that the amount of premiums paid was excessive.

The decree allowing the account imports a finding that the payment of premiums for fire insurance as shown therein was not improper because excessive in amount. The question presented for decision on appeal is whether this finding

---

period of twenty years after the death of the survivor thereof to their issue, "and at the end of said twenty years to transfer said premises free from all trusts to such of the issue of said Paul Cecil and Joseph Eugene as bear the name of Spofford, such issue taking by right of representation and in the event of the failure of any such issue bearing the name of Spofford to such of my relations of the name of Spofford as the survivor of said Paul Cecil and said Joseph Eugene, shall by Will appoint; and in default of appointment then to such of my *nearist* blood relations by the name of Spofford as would have taken my estate had I then died intestate leaving no relations except blood relations of the name of Spofford; it being my wish and intentions that said properties which have been in my family for more than two hundred and fifty years should continue to be held for and belong to persons by the name of Spofford and preferably my nephews the said Paul Cecil Spofford and Joseph Eugene Spofford, and their issue." The clause further provided "that the trustees for the time being hereunder shall have no power to sell or dispose of the premises described in this article of my Will except that I give to such trustees a special power to sell and dispose at such times and on such terms and to such person or persons without the need of obtaining any leave of Court any and all of said Mariette Pasture so called reserving a way over the same to be used to go to the top of Bald Pate and to sell and dispose in like manner such small parts of the other trust premises as may from time to time be necessary and appropriate in adjusting boundary lines or constructing suitable ways and otherwise incidental to the *genar-l* purpose of holding The Bald Pate, Inn, and the greater part of the land about and used with the same together for the Spofford family as hereinbefore prescribed for."

is consistent with and supported by the facts appearing in the report of material facts. *Topor* v. *Topor*, 287 Mass. 473, 476. *Goldston* v. *Randolph*, 293 Mass. 253, 255. The facts so appearing include among others the following: The "property disposed of by said fifth clause of the testator's will consisted of The Bald Pate Inn, a well known and at times popular country hotel situated on the border line between the town of Georgetown and Boxford in said County of Essex together with several cottages and outbuildings used with the inn. There was also a large amount of unimproved land. . . . There was no personal property in the trust except some furniture used in the inn. The entire income of the trust came as rent of the inn and the buildings used with it. [The gross income of the trust for the period covered by the account as shown thereby was $10,864.23.] If the inn should be destroyed by fire the income of the trust would not be sufficient to pay the taxes, interest on mortgage and other carrying charges upon the property, and consequently the property would be lost. During the period covered by the account the life beneficiaries have received $1264.43 each from the trust. They have received nothing since September 10, 1930."

With respect to the fire insurance on the buildings the following facts appear: The "policies of fire insurance procured to be written upon the trust property by the accountant conformed to the Massachusetts standard form of fire insurance policy." "In determining the amount of fire insurance that should be carried upon the property the accountant tried to ascertain the insurable value of the buildings." (The judge defined "insurable value," as here used, as "the cost of replacing the buildings less any depreciation that should be allowed because of their age or condition of repair.") "The amount so determined varied at different times as the cost of construction varied. . . . The accountant placed the fire insurance with the purpose of carrying a sufficient amount to replace the property in case it was destroyed by fire. He made inquiries of the tenant who had leased the inn for many years. He requested the insurance agent to have the buildings examined to ascer-

tain their insurable value and he employed two contractors and builders to give him estimates of the cost of replacing the buildings. . . . The estimates of said contractors strictly do not show replacement costs. The buildings were very old and built with heavy beams and frame and the cost of duplicating them would be great. The estimates of the contractors were upon the cost of erecting buildings of the same size and form using modern materials and methods of construction." The judge found that if "it be held that it was proper for the trustees to use the replacement value of the buildings as the test of the amount of insurance to be carried . . . the items in the account showing payments for fire insurance are reasonable and proper . . . [but that] the market or fair value of the buildings to be used with the land upon which they stand during the period covered by the account was as follows: [Here follow valuations of separate buildings aggregating $15,400 in amount.]" From the report of material facts it appears that the buildings were insured for at least twice this amount, and for a part of the period for much more than twice this amount. The judge in his "Rulings" stated that he ruled that "it was the duty of the trustee to insure the buildings in such sums as would suffice to replace the buildings if destroyed by fire," and declined to make the rulings requested by the appellants.

No part of the premiums paid for fire insurance on buildings as shown in the account is to be disallowed on the ground that the amounts paid were excessive if, according to the standard of conduct applicable generally to the management of the affairs of the trust, the payments were made in good faith and in the exercise of sound discretion, that is, in the exercise of reasonable skill, prudence and judgment. The trustees cannot be held for the consequences of an error in judgment unless the error is such as to show either that they acted in bad faith or that they failed to exercise sound discretion. *Pine* v. *White*, 175 Mass. 585, 590. *Taft* v. *Smith*, 186 Mass. 31, 32. *Kimball* v. *Whitney*, 233 Mass. 321, 331. *State Street Trust Co.* v. *Walker*, 259 Mass. 578, 583. The specific facts reported

support the conclusion that the payments were made in good faith and in the exercise of sound discretion.

That the facts reported support the conclusion that the trustees acted in good faith requires no discussion. The principal contention of the appellants is that the premiums paid for fire insurance were excessive because the buildings were insured for a greater amount than could be recovered if they were destroyed by fire. Obviously the trustees were not required, in the exercise of sound discretion, to determine at their peril the precise amount which could be recovered on the policies in the event of total destruction of the buildings or which would be the basis for recovery in the event of partial destruction thereof. Nor is it essential to a decision of this case to determine that amount. This contention of the appellants is met if the amount for which the buildings were insured did not exceed the amount which might reasonably be anticipated as the amount of recovery in the event of total destruction of the buildings or the basis for recovery in the event of partial destruction thereof.

Each policy — which was in the standard form prescribed by G. L. (Ter. Ed.) c. 175, § 99 — provided that the company "shall not be liable beyond the actual value of the property at the time any loss or damage happened," and that the amount of loss or damage by fire was to "be established according to the actual value of the property at the time any loss or damage happens." The first of these provisions merely embodies the provision of G. L. (Ter. Ed.) c. 175, § 96, that if "buildings within the commonwealth insured against loss by fire are totally destroyed by fire, the company shall not be liable beyond the actual value of the insured property at the time of the loss or damage." See *King* v. *Niagara Fire Ins. Co.* 234 Mass. 301, 306–307. G. L. (Ter. Ed.) c. 175, § 95, prohibits a company from issuing any insurance "of an amount which, with any existing insurance thereon, exceeds the fair value of the property."

A contract of fire insurance is a contract of indemnity, so far as direct loss or damage is concerned. *Hewins* v. *London Assurance Corp.* 184 Mass. 177, 179. "It is well

settled that the principle on which damages are assessed in insurance cases is that of indemnity for the loss actually sustained." *Wall* v. *Platt*, 169 Mass. 398, 405. In a case which arose under a policy of fire insurance issued before the adoption of the standard form of policy it was said that the "contract of the insurer is not that, if the property is burned, he will pay its market value; but that he will indemnify the assured, that is, save him harmless, or put him in as good a condition, so far as practicable, as he would have been in if no fire had occurred." *Washington Mills Emery Manuf. Co.* v. *Weymouth & Braintree Mutual Fire Ins. Co.* 135 Mass. 503, 506–507. In the later case of *Tabbut* v. *American Ins. Co.* 185 Mass. 419, 421, it was said that "A contract for insurance against fire, in the form prescribed by our statute, is a contract of indemnity, and the assured is only entitled to be put in the same condition pecuniarily that he would have been in if there had been no fire."

The words "actual value" in the policies and in the statute are to be interpreted in the light of the nature of the insurance contract as a contract of indemnity. They import that recovery for loss cannot be based upon a value dependent upon fanciful considerations (compare *Wall* v. *Platt*, 169 Mass. 398, 407), and that recovery cannot be had for incidental loss or damage resulting from fire, such, for example, as "interruption of business, loss of profits or even loss of rents." *Hewins* v. *London Assurance Corp.* 184 Mass. 177, 179. But the words "actual value" do not import that recovery is limited to market value. The words "actual value" as commonly used and as used in the policies and in the statute are not synonymous with the words "market value" (see *Woonsocket Machine & Press Co.* v. *New York, New Haven & Hartford Railroad,* 239 Mass. 211, 214), though the actual value of property and its market value are frequently the same. Furthermore, "market value does not in all cases afford a correct measure of indemnity . . . . In some cases there is no market value, properly speaking, and in others, if there is, it plainly would not of itself afford full indemnity." *Wall*

v. *Platt*, 169 Mass. 398, 405–406.    See *Massachusetts General Hospital* v. *Belmont*, 233 Mass. 190, 207.    Buildings adapted to the land on which they stand are not ordinarily bought and sold in the market separately from the land and ordinarily do not have a market value apart from the land, in the strict sense of the term.    And the so called market value of such buildings, based either on their market value for the purpose of removal or on the amount by which they increase the market value of the real estate as a whole, may not be a true measure of indemnity for direct loss by fire.    *Bardwell* v. *Conway Mutual Fire Ins. Co.* 122 Mass. 90, 95.    *Wall* v. *Platt*, 169 Mass. 398, 406.    *McAnarney* v. *Newark Fire Ins. Co.* 247 N. Y. 176, 181–183.

On the other hand, even where market value will not afford the indemnity for which the contract of insurance provides, the cost of replacement, less depreciation, is not conclusive as to the actual value of a building destroyed or damaged by fire, according to which value the amount recoverable as indemnity for loss so sustained is to be determined.    But it is important evidence of such value to be considered with other evidence.`    See *Washington Mills Emery Manuf. Co.* v. *Weymouth & Braintree Mutual Fire Ins. Co.* 135 Mass. 503, 505–506, 507; *Wall* v. *Platt*, 169 Mass. 398, 406; *McAnarney* v. *Newark Fire Ins. Co.* 247 N. Y. 176, 184–186.    The cases of *Second Society of Universalists in Boston* v. *Royal Ins. Co. Ltd.* 221 Mass. 518, and *King* v. *Niagara Fire Ins. Co.* 234 Mass. 301, relied on by the appellants, are not authorities to the contrary.    In each of these cases the replacement cost which was held to be immaterial was the cost of replacing a building totally destroyed by fire by a building of different character where the building laws did not permit replacement by a building of the same character.    See also *Brinley* v. *National Ins. Co.* 11 Met. 195, 198.    Compare, however, *Hewins* v. *London Assurance Corp.* 184 Mass. 177, where an insured building was only partially destroyed.    These decisions do not require that, in determining the value of a building either totally or partially destroyed by fire, the cost of replace-

ment, less depreciation, of a building of the same character be excluded from consideration.

G. L. (Ter. Ed.) c. 175, § 95, is not a limitation upon the amount recoverable under a policy though the policy is issued in violation thereof. G. L. (Ter. Ed.) c. 175, §§ 193, 194. *Hewins* v. *London Assurance Corp.* 184 Mass. 177, 183–184. *Austin* v. *Dixie Fire Ins. Co.* 232 Mass. 214, 216–218. *Harwood* v. *Security Mutual Life Ins. Co.* 263 Mass. 341, 348.

We think that, in the light of the governing principles of law, on the facts reported, the trustees might reasonably have anticipated recovery on the policies, in the event of loss or damage by fire, of an amount established according to a value greater than the "market or fair value" — "fair value" evidently being used here as synonymous with "market . . . value" — of the buildings as found by the probate judge, based wholly or partly on replacement cost, less depreciation. Consequently, the facts reported support the conclusion that, so far as the propriety of the payments of premiums depends upon the amount which would be recoverable under the policies, the trustees exercised sound discretion.

The appellants suggest further that the amounts paid for premiums were excessive because constituting so large a part of the income of the trust. The payments are not to be disallowed on this ground. The duty of the trustees was to manage the trust in accordance with the intention of the testator as disclosed by the will and with due regard to the respective interests of the successive beneficiaries. Am. Law Inst. Restatement: Trusts, § 232. While the testator may have expected that the trust would yield a reasonable income for the life beneficiaries his primary purpose, as disclosed by the will, was to preserve for "the Spofford family" the greater part of the real estate devised in trust. This primary purpose was to be carried out even if the life beneficiaries did not receive as much income as a trust having no such primary purpose would normally produce. The facts reported show that it was important

to the carrying out of this primary purpose that the buildings be kept insured at the expense of the income of the trust. The trustees were not required to incur the risk of loss of the devised property through destruction of the buildings by fire without adequate insurance, or to exhaust such devised property in the payment of insurance premiums in order that there might be more income for the life beneficiaries. The facts reported support the conclusion that it was an exercise of sound discretion in the administering of the trust according to the testator's intention to insure the buildings in such sums as would replace them if they were destroyed by fire, making due allowance for depreciation.

The ruling or finding that "it was the duty of the trustee to insure the buildings in such sums as would suffice to replace the buildings if destroyed by fire" clearly refers to replacement cost, less depreciation. It necessarily imports a ruling or finding that it would be an exercise of sound discretion to insure the buildings in such amounts. We need not consider the rulings requested by the appellants which the probate judge declined to make. Even so far as they stated the law correctly, in a case like this, failure to make them is not a ground for reversing the decree. *Worcester Bank & Trust Co.* v. *Ellis*, 292 Mass. 88, 94.

The appellants, though including the small item for premiums paid for rent insurance among the items to which they object (an item which the probate judge found to be a proper expenditure reasonable in amount), make no argument in support of the objection. This objection is treated as waived. See *Commissioner of Banks* v. *Cosmopolitan Trust Co.* 247 Mass. 334, 346.

*Decree affirmed.*