LAMPE MARKET COMPANY et al; Respondents v. THE ALLIANCE INSURANCE COMPANY, Appellant.

(22 N. W.2d 427)

(File No. 8804. Opinion filed March 28, 1946.)
Rehearing Denied May 3, 1946.

**Roy E. Willy,** of Sioux Falls, for Appellant.

**Churchill & Churchill** and **Irwin A. Churchill,** all of Huron, for Respondents.

SMITH, J.   Plaintiffs' action is founded upon a fire insurance policy. The narrow issue presented by defendant's appeal is whether the trial court erred in refusing to limit the jury to a consideration of the cost of reproduction, less depreciation, in determining the "actual cash value" of plaintiffs' building.

The pleadings and a stipulation made at a pretrial hearing established the following facts: Plaintiffs are the owners

of a so-called fireproof market and office building located on one of the principal corners of the business section of Huron, South Dakota. Under a statutory form of policy defendant insured plaintiffs in the amount of $12,000 against loss or damage by fire to its building. Attached to this policy is a standard "Reduced Rate Average Clause" reading: "It is a part of the consideration for this policy and the basis upon which the rate of premium is fixed that the insured shall maintain insurance on the property described in this policy to the extent of at least 90 per cent. of the actual cash value thereof, and that failing to do so, the insured shall be a co-insurer to the extent of such deficit and to that extent shall bear his, her or their proportion of any loss; * * *." The property was damaged by fire on April 22, 1943, and the loss and damage thereafter was adjusted at the figure of $2,677.39. On the date of the fire $68,000 in fire insurance was in force on the property. On the theory that the "actual cash value" of the property was in excess of $100,000 and that therefore plaintiffs were co-insurers to the extent of at least $22,000, the defendant tendered plaintiffs the amount of $357.03 as its proportionate amount of the loss and damage as established by the adjustment. The tender was refused.

The stipulation made upon pretrial hearing read in part as follows: "It is agreed that at the time of the fire herein referred to the cost of replacement new of the insured property, less a reasonable depreciation thereon, as computed by standard methods of accounting and depreciation, for replacement with the same material of like kind and quality was $100,000.00. At the time of the fire herein referred to and for a number of years prior thereto, and also since said date, the real property described in the Complaint * * * with the building, improvements and permanent fixtures attached thereto, could not have been sold for as much as $75,000.00, after reasonable and diligent effort to sell the same and at a sale in which the vendor was not forced to sell but in which he was ready and willing to sell and the vendee was not forced to buy but was able, ready and willing to buy. * * * This price of

$75,000.00 would include the ground, as well as the building, improvements and permanent fixtures, and the fair cash market value of the ground at all of said times was $5,-000.00."

Evidence was received at the trial of the time and cost of original construction, the use to which the building had been put, and bearing upon the measure of obsolescence which had accrued. Two experts were permitted to testify that there was a market for such property in Huron, and to express their opinion of the cash value of the building, together with the ground upon which it is situated, and of the ground separately as of the time immediately before the fire.

The court submitted but one question to the jury, viz., "What was the 'actual cash value' of the building * * * at the date of the loss and damage?" and among others gave the following instruction, viz., "In determining the 'actual cash value' of said building the jury should take into consideration the cost of restoration or replacement of the building less depreciation thereon since it was erected; any element of obsolescence; the size of the building; the material of which it is composed; its age and state of preservation. You should also take into consideration the amount for which the property would sell for cash at a fair sale in the usual course of business; that is, the amount for which the property would sell at a sale in which the seller was not forced to sell but in which he was ready and willing to sell and the purchaser was not forced to buy but was ready and willing to buy. You should take into consideration the opinions upon value given by qualified witnesses; the gainful uses to which the building might have been put; its value for the purpose of rental; its location in the community, and any other facts disclosed by the evidence which will throw any light upon the actual cash value of the building at the time of the loss."

The jury found the actual cash value of the building at the time in question to be $75,000. Thereupon the court entered judgment for plaintiff for twelve sixty-eights of the adjusted amount of the loss and damage.

From the outset the defendant, by motions and exceptions, has contended that the sole factor to be considered in arriving at the "actual cash value" of the building is the replacement cost, less a reasonable depreciation. From the phrasing of the pretrial stipulation, quoted supra, and from the wording of defendant's motions and exceptions, the trial court must have interpreted and understood defendant to mean "replacement cost less physical depreciation."

■ The trial court did not err. Although replacement cost, less depreciation, is an element to be considered, it is not the sole test of the actual cash value of an insured building. McAnarney v. Newark Fire Ins. Co., 247 N. Y. 176, 159 N. E. 902, 56 A. L. R. 1149, and the annotation at 1155; Kingsley v. Spofford, 298 Mass. 469, 11 N. E.2d 487; Citizens' Sav. Bank & Trust Co. v. Fitchburg Mutual Fire Ins. Co., 86 Vt. 267, 84 A. 970; and Britven v. Occidental Ins. Co., San Francisco, Cal., 234 Iowa 682, 13 N. W.2d 791. And see Valuation of Property to Measure Fire Insurance Losses, XXIX Columbia Law Review 857.

■ The words "actual cash value" are employed in the statutory policy for the purpose of placing a limit upon the measure of indemnity for which the insurer is obligated. The policy provides: "* * * this company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; * * *." SDC 31.2402(2). Indemnity is thereby so limited as to exclude incidental damages and all fanciful considerations in arriving at the value of the insured property. Kingsley v. Spofford, supra. The significance of the words is "actual value" expressed in terms of money. McAnarney v. Newark Fire Ins. Co., supra. Obviously the words "actual cash value" were employed in the same sense in standard "Reduced Rate Average Clause."

■ Replacement cost, less physical depreciation, establishes the theoretical present cost of reproducing a par-

ticular building. It is not the invariable test of value because in a particular case other factors may overcome or qualify its influence upon sound opinion. Value, after all, is a matter of opinion. Butler v. Aetna Ins. Co., 64 N. D. 764, 256 N. W. 214. It cannot be denied that on occasion such considerations as location and obsolescence will reduce value below reproduction cost. "Actual" cash value will not be arrived at by ignoring such realities.

In the leading case of McAnarney v. Newark Fire Ins. Co., supra, the insured buildings were designed for the manufacture of malt and were destroyed by fire in 1920 after the passage of the National Prohibition Act, 27 U. S. C. A. § 1 et seq. The insurer contended that obsolescence should be considered in determining value. The trial court limited the jury to a consideration of replacement cost less depreciation. In reversing the trial court, the court wrote as follows [247 N. Y. 176, 159 N. E. 905]: "Under our interpretation of the phrase, the insurer 'does insure' to the limit of actual value. To insure is 'to guarantee or secure indemnity for future loss or damage.' The Century Dictionary. Where insured buildings have been destroyed, the trier of fact may, and should, call to its aid, in order to effectuate complete indemnity, every fact and circumstance which would logically tend to the formation of a correct estimate of the loss. It may consider original cost and cost of reproduction; the opinions upon value given by qualified witnesses; the declarations against interest which may have been made by the assured; the gainful uses to which the buildings might have been put; as well as any other fact reasonably tending to throw light upon the subject."

By the pretrial stipulation it became an established fact in this case that a purchaser able and willing to buy this property would not pay within $25,000 of its cost of replacement, less depreciation. Experts fixed its value at $75,000. See Moulton v. Globe Mutual Ins. Co., 36 S. D. 339, 154 N. W. 830. Not because these matters were determinative, but because of their logical bearing on the issue, do we approve of the instruction of the trial court which but permitted the jury to weigh these matters in connection

with replacement cost, less depreciation, and other evidence, in resolving the ultimate question of "actual cash value."

Finding no error in the record, the judgment is affirmed.

All the Judges concur.

A. B. BECK, Circuit Judge, sitting for POLLEY, J.