Wilma HEER, Leonard Heer, and Flynn Heer, Plaintiffs–Appellants and Cross–Appellees,

v.

STATE of South Dakota, Defendant–Appellee and Cross–Appellant.

Nos. 15791, 15795.

Supreme Court of South Dakota.

Argued Jan. 11, 1988.

Decided Nov. 23, 1988.

Ellsworth E. Evans and Michael J. Schaffer of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for plaintiffs-appellants and cross-appellees; Timothy M. Gebhart of Davenport, Evans, Hurwitz & Smith, Sioux Falls, on the brief.

William P. Fuller of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant-appellee and cross-appellant.

HENDERSON, Justice.

PROCEDURAL HISTORY

Plaintiffs Leonard Heer, Wilma Heer, and Flynn Heer (Plaintiffs) filed a com-

plaint in the circuit court for Hutchinson County seeking compensation from the State of South Dakota (State)[1] for flood damage to their personal and real property, lost profits on drowned hogs, and crop losses allegedly caused by the State's negligence in maintaining the Menno Dam. The dam failed and collapsed on June 12, 1984. On the day of trial, the State admitted liability. A jury trial was then held regarding damages. The jury awarded $590,523 to Plaintiffs in damages, but allowed prejudgment interest on only a fraction of the total award. Plaintiffs appeal to this Court, urging trial court error in three respects:

1) Plaintiffs were entitled to prejudgment interest, as a matter of law, under SDCL 21–1–11, on damages relating to real and personal property;

2) As the jury awarded prejudgment interest on part of each category of damages, Plaintiffs were entitled to such interest on the entire award; and

3) Fees of an expert witness hired to establish liability are taxable as costs under SDCL 15–17–4 where the State admitted liability on the day of trial.

A notice of review, filed by the State, asserts that the trial court erred in three matters:

1) A jury instruction indicating that the jury could consider replacement cost adjusted for depreciation in determining "fair market value" of real estate and structures was erroneous;

2) Plaintiffs' claim for future relocation costs was not reasonably certain and should not have been submitted to the jury; and

3) As Plaintiffs' crops would have been destroyed by subsequent floods unrelated to the Menno Dam's failure, crop losses should not have been considered by the jury.

Regarding these State arguments, Plaintiffs maintain that the State waived its right to appeal by satisfying the judgment. After examining all issues raised by both parties, we reverse solely on the question

of prejudgment interest as it pertains to the Heers' hog losses.

## FACTS

In 1978, an official of the South Dakota Department of Water and Natural Resources accompanied a United States Army Corps of Engineers team during an inspection of the Menno Dam, which is located on Furlong Creek near the creek's junction with the James River. The Corps of Engineers reported that the dam was seriously inadequate, and presented a high potential for property damage and loss of life as there was a farmstead located a mile downstream, between the dam and the James River. The engineers' report was distributed to various State offices, but no action was taken, apparently because of confusion as to which State agency was responsible for the dam.

On June 12, 1984, Plaintiffs, who lived on the farmstead mentioned in the report, noticed a trickle of water in their yard. This trickle swelled rapidly. Flynn Heer left the house to investigate, saw a wall of water approaching, and alerted the rest of the family in time for them to flee to higher ground. The Menno Dam had overtopped and ruptured, flooding the Heer farm. Buildings and other property were destroyed or damaged, topsoil was stripped from fields, crops were ruined, hogs were swept away, and sandy deposits from the dam's structure were deposited in Plaintiffs' fields.

Plaintiffs filed a complaint on April 18, 1985, alleging that the State had been aware of the dam's dangerous condition and had negligently failed to correct it, causing the flood which swept their farm. Plaintiffs sought $1,500,000 as compensation for damage to personal and real property, among other things, plus prejudgment interest and such other relief as the court would deem appropriate. The amount of damages reflected in Plaintiffs' answers to State's interrogatories, filed on December 23, 1985, was $936,493.43 (comprised of $500,326.60 in real property damage and $436,166.83 in personal property damage). At a motion hearing held on

---

**1.** Several State officials were initially named as codefendants, but were dismissed from the ac-

tion before trial.

December 16, 1986, Plaintiffs' counsel stated that they would amend their complaint to reduce their $1,500,000 damage claim to $999,999, as the limit of State's insurance coverage was $1,000,000. State's pretrial offer to settle for the amount of $386,000 was refused by Plaintiffs.

At the trial held on February 2, 1987, Plaintiffs submitted exhibits totaling $925,196.71, and their counsel, in closing argument, stated that their plea was for $852,176 (including damages to real property totaling $258,879.77). During settlement of jury instructions, Plaintiffs requested that prejudgment interest be awarded to

them as a matter of law under SDCL 21-1-11.[2] The trial court decided to submit the matter of prejudgment interest to the jury under SDCL 21-1-13.[3] Verdict forms went to the jury which separated damages and the interest to be awarded into four categories: 1) Personal Property; 2) Loss of Profits; 3) Damage to Crops; and 4) Real Property. Plaintiffs' sole objection to the verdict forms was that "moving expenses" were not set out as a separate category.

When the jury returned its verdict, the verdict forms established that the jury awarded damages and prejudgment interest to the Plaintiffs as follows:

| TYPE OF DAMAGES | DAMAGES AWARDED | DAMAGE AMOUNT FOR COMPUTING INTEREST | COMMENCEMENT DATE |
|---|---|---|---|
| Personal Property | $302,795.01 | $ 5,194.21 | 6-12-84 |
| Loss of Profits | 84,728.16 | 42,364.08 | 9-12-85 |
| Crop Damage | 8,134.00 | 8,134.00 | 12-1-84 |
| Real Property | 194,865.90 | 3,298.95 | 6-12-84 |

Plaintiffs made a motion to amend the judgment or, alternatively, for a new trial on the grounds that they were entitled to prejudgment interest on the full amounts of their awards for damages regarding personal and real property. Their motion was denied by the trial court whereupon this appeal followed. Plaintiffs also appealed the trial court's refusal to award expert witness fees. The State appealed regarding three issues of its own, after its insurer paid the amount of the verdict.

### DECISION

#### A. NO. 15791, PLAINTIFFS' NOTICE OF APPEAL

1) *Prejudgment Interest under SDCL 21-1-11*

■ The Heers' first claim is that the trial court erred in refusing to award them

prejudgment interest on their damages for personal and real property, as a matter of law, under SDCL 21-1-11. As to all but the Heers' destroyed hogs, we disagree.[4]

"To be awarded prejudgment interest under this statute, the exact amount of damages must be known or readily ascertainable." *Hanson v. Funk Seeds Int'l*, 373 N.W.2d 30, 36 (S.D.1985) (citing *Beka v. Lithium Corp. of America*, 77 S.D. 370, 375, 92 N.W.2d 156, 160 (1958)). *See also Arcon Constr. Co. v. South Dakota Cement Plant*, 405 N.W.2d 45 (S.D.1987); *Amert v. Ziebarth Constr. Co.*, 400 N.W.2d 888 (S.D.1987); *Winterton v. Elverson*, 389 N.W.2d 633 (S.D.1986). This Court, interpreting SDC 37.1711 (identical to SDCL 21-1-11) in *Beka*, observed that prejudgment interest was allowable on damages if there existed established or reason-

---

**2.** SDCL 21-1-11 provides:

Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt.

**3.** SDCL 21-1-13 provides:

In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury.

**4.** Contrary to a special writing herein, this decision does not change the substantive law of South Dakota regarding prejudgment interest; rather, the difficulty in these cases is to correctly apply the prejudgment interest statutes to the facts at hand.

ably ascertainable market prices or values of the subject matter by reference to which the amount due could be determined by computation. *Beka,* 77 S.D. at 375, 92 N.W.2d at 159. Where the value of damaged or destroyed property is not readily ascertainable because of unique qualities or the absence of a common market therefor, SDCL 21–1–11 does not apply. *Winterton,* 389 N.W.2d at 639; *Meyer v. Dixon Bros., Inc.,* 369 N.W.2d 658, 661 (S.D.1985). Also, SDCL 21–1–11 is inapplicable if the damages are uncertain until determined by the trier of fact. *Winterton,* 389 N.W.2d at 639; *Hanson,* 373 N.W.2d at 36; *Meyer,* 369 N.W.2d at 661. " 'When the person who is liable does not know what sum *he owes,* however, or cannot ascertain the amount he ought to pay with reasonable exactness, then he cannot be in default for not paying.' " *South Dakota Bldg. Auth. v. Geiger–Berger Assocs.,* 414 N.W.2d 15, 22 (S.D.1987) (emphasis in original) (quoting *Arcon Constr. Co.,* 405 N.W.2d at 47).

In this case, we note that the amounts of damages claimed by Plaintiffs regarding both real and personal property at different times varied greatly. Plaintiffs prayed for $1,500,000 in damages in their complaint filed April 18, 1985. No specific total of real or personal property damages were set out in the complaint. Plaintiffs' responses to the State's interrogatories, filed December 23, 1985, set forth damages totaling $936,493.43, composed of $500,-326.60 in real property damages and $436,-166.83 in personal property damages. Comparison of these figures from the interrogatories to the damages ultimately awarded by the jury is illuminative; the jury awarded only $302,795.01 for personal property damages, and $194,865.90 for real property damages. "[W]here there is a large discrepancy between the amount of damages demanded in the complaint and the size of the eventual award, that fact militates against the certainty mandated by the statute." *Amert,* 400 N.W.2d at 892 (citing *Polster, Inc. v. Swing,* 164 Cal.App. 3d 427, 210 Cal.Rptr. 567 (1985)). *See also*

*Arcon,* 405 N.W.2d at 48 (*Arcon III*). While such variance, alone, is not determinative, it is a relevant factor to be considered in relation to SDCL 21–1–11. *Kellogg v. Rowett,* 408 N.W.2d 334, 335–36 (S.D.1987). Here, no amount of real or personal property damages were stated in the complaint at all. Plaintiffs' counsel, in his closing argument, asked the jury for real property damages of $258,879.77, an amount at variance with the $500,326.60 claimed earlier in response to the State's interrogatories. Also, Flynn Heer testified that the farm's value before the flood was $600,000 and was reduced to $20,000 after the flood; this indicated a loss of $580,000, a figure contradicting Plaintiffs' exhibits. Surely, the State was uncertain of the amount of damages when the Plaintiffs were uncertain in their proof. Where amounts fluctuate throughout litigation, they are not liquidated.

Further, SDCL 21–1–11 is inapplicable where items of claimed damages are not based on reliable data. *Meyer,* 369 N.W.2d at 661. Plaintiffs' hog confinement building, which incorporated a custom-built feeding system, was classified as "unique" by Flynn Heer. No equivalent system existed on the open market, according to Flynn Heer. Property of "unique" qualities falls under SDCL 21–1–13, not SDCL 21–1–11. *Winterton,* 389 N.W.2d at 639; *Meyer,* 369 N.W.2d at 661. The long lists of tools, pipe fittings, clothing, paints, and the like furnished by Plaintiffs were not based on comparisons of pre-flood inventories to what remained after the flood because no such inventories existed. The lists, while seemingly exact, were based on memory and admitted, by Leonard and Flynn Heer, to be imprecise. The damages claimed on the basis of these lists were arbitrary. Regarding the tools, for example, Plaintiffs' testimony indicated that some were acquired as long ago as 1954 while others were new, and no indication of the tools' condition was given. As damages for these items were based, in part, on depreciation, the damages claimed were

guesswork. Not only were the lists imprecise, but so were the valuations assigned. Some tools listed were not, in fact, lost at all, according to Leonard Heer. The State questioned the validity of these figures, and their reasonableness was for the jury to decide. Evidence presented by the Plaintiffs was self-contradictory, as where Flynn Heer valued a 1961 maroon Corvette at $25,000 before the flood, and Howard Goehring, another witness for the Plaintiffs, valued the same vehicle at $17,000. Regarding a Freightliner truck, Flynn Heer testified to a pre-flood value of $55,000, then acknowledged that the highest published market value of such a truck in June 1984 was $15,000.[5]

In contrast to the uncertainty of damages claimed for the balance of the Heers' personal property, their losses for dead hogs were reasonably certain. Their complaint alleged that 457 hogs were lost. Their answers to the State's interrogatories indicated that their loss for 457 destroyed hogs was $51,741.54, calculated by multiplying the number of hogs (457) by their average weight (222 pounds) and a premium price derived from sales records ($.51 per pound). At trial, the Heers claimed 445 hogs lost, and recalculated their damages to be $50,382.90 (445 × 222 × $.51). The twelve hog (2.6%) difference between the 457 hogs reported in the complaint and answers to interrogatories is not so great as to deny an award of prejudgment interest under SDCL 21–1–11. The variance is insignificant when compared to the "twenty-five, thirty, or thirty-five" pigs estimated to have been destroyed in *Fullerton Lumber Co. v. Reindl*, 331 N.W.2d 293,296 (S.D.1983), where SDCL 21–1–11 was held not to apply. Unlike the situation in *Reindl*, and the long lists of personal property based on guesswork in this case, the Heers had pre-flood records of their hogs, and could calculate the number of hogs they lost with reasonable certainty. The weights and prices used in their calcula-tions also were based on purchase/sale records. The State was aware of the 445 hog loss, as its investigator, Jerry Matthiesen, stated in his deposition that 445 hogs was within the range of numbers he used in estimating the Heers' losses. Because the hog losses were reasonably ascertainable with reference to the Heers' records and market prices, and the date of their loss (the flood) was certain, we reverse the trial court to the extent that it refused to award prejudgment interest, *as a matter of law* under SDCL 21–1–11, on the hog loss of $50,382.90. Interest on this $50,382.90 amount is to be added to the prejudgment interest awarded by the jury under SDCL 21–1–13. No retrial is required.

As to real property, both the amount of damage inflicted and the valuation of the real property were grossly uncertain until the jury decided factual issues. State's appraiser disagreed with Plaintiffs' opinion of what constituted comparable farm property. When the experts cannot agree on this, it is obvious that there will be gross variations in damage figures. The jury had to choose between the various opinions presented. The parties could not agree as to what constituted equivalent farm property. These experts could not agree as to the basic characteristics (*i.e.*, soil types). The certainty required is absent when the amounts due turn on disputed facts, but not when the dispute is confined to the rules governing liability. *Olson v. Cory*, 35 Cal.3d 390, 197 Cal.Rptr. 843, 673 P.2d 720 (1983). Factual disputes also arose over the degree to which the real property was actually damaged. As noted above, Plaintiffs' interrogatory responses, testimony, and exhibits were contradictory. Clearly, more than mere arithmetical computation was involved here. *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251,259 (S.D. 1976). The disparities were of such inherent nature that uncertainty, rather than certainty, predominated.

**5.** The Plaintiffs' interrogatory responses claimed $115,285 in damages to self-propelled motor ve-hicles, yet their exhibit submitted at trial indicated only $71,400 in such damages.

In these circumstances, where great variance existed between damages pleaded and awarded (*Amert,* 400 N.W.2d at 892), the claims were based on often unreliable information (*Meyer,* 369 N.W.2d at 661), and factual issues as to the degree of damage remained to be decided (*Winterton,* 389 N.W.2d at 639; *Meyer,* 369 N.W.2d at 661), the Plaintiffs were not entitled to prejudment interest under SDCL 21–1–11. However, as depicted above, the jury did award *some* prejudgment interest under SDCL 21–1–13.

We affirm the trial court's submission of prejudgment interest on the Heers' damages to the jury's discretion under SDCL 21–1–13, with the single exception of the Heers' hog losses. The trial court is reversed as to the prejudgment interest on the hog losses. On remand, it shall award prejudgment interest on $55,577.11 of personal property damages, found by the jury to be in the sum of $5,194.21 and add thereon prejudgment interest for hog losses under SDCL 21–1–11.

2) *Prejudgment Interest under SDCL 21–1–13*

■ Plaintiffs next assert they were entitled to prejudgment interest on the full amount of damages awarded because the jury awarded them some interest on damages in each category under SDCL 21–1–13. Distilling their argument, it is this: The jury, under this statute, has discretion only as to the decision to award or not to award interest in each category. We are urged to hold that the jury has no authority to specify the amount of the damages.

Under South Dakota law, the discretion of the jury is not as limited as Plaintiffs contend. SDCL 21–1–13 provides, in relevant part, that "interest may be given, in the discretion of the jury." In contrast to SDCL 21–1–11, "the jury may determine whether prejudgment interest should be awarded, and if so, how much." *South Dakota Bldg. Auth. v. Geiger–Berger Assocs.,* 414 N.W.2d 15, 19 (S.D.1987). *Geiger–Berger* is consistent with *Meyer v. Dixon,* 369 N.W.2d 658, 661 (S.D.1985), where this Court directed that special interrogatories must be submitted to the jury, outlining the type, amount, and date of occurrence of damages found by the jury when damages are sought under SDCL 21–1–13. The trial judge applied our decisional law and this statute correctly. When read in conjunction with each other, *Geiger–Berger* and *Meyer* indicate that the jury is to decide, under this statute, the amount of damages on which prejudgment interest is to be calculated.

3) *Expert Witness Fees*

■ Plaintiffs lastly advocate they are entitled to tax as costs $5,760.98 in expert's fees. These fees were incurred by the Plaintiffs' hiring of an engineer whose testimony was to be used to establish liability. This witness was never called, as the State admitted liability on the day of trial. Such an expense is taxable, according to Plaintiffs, under SDCL 15–17–4, which provides that a party may recover "the necessary expense of taking depositions and procuring necessary evidence."

We do not interpret SDCL 15–17–4 so broadly, and find no other statutory authority for Plaintiffs' claim in this regard. "Only those costs permitted by statute may be awarded." *Hepper v. Triple U Enterprises, Inc.,* 388 N.W.2d 525, 531 (S.D. 1986). While costs may include fees for expert witnesses, such cost cannot exceed the daily witness fee established under SDCL 19–5–1. *Id. See also Arcon Constr. Co. v. South Dakota Cement Plant,* 349 N.W.2d 407, 416 (S.D.1984) (*Arcon I*); *Wagner v. Wagner,* 83 S.D. 565, 163 N.W.2d 339 (1968). SDCL 19–5–1, we note, provides only a $20 per diem and 21 cents per mile of travel. As there is no statutory authority for Plaintiffs' claim, we affirm the trial court on this issue.

### B. NO. 15795, STATE'S NOTICE OF REVIEW

■ To reach the issues raised by the State, we first consider whether it waived its right to appeal by voluntarily paying the amount of the judgment. We hold that the State did not waive its rights, as "[v]olun-

tary acceptance of the benefits of a judgment waives the right to review only in those cases where the review could lead to a denial or reduction of such benefits." *Dougherty v. Beckman,* 347 N.W.2d 587, 590 n. (S.D.1984) (citing *Siedenburg v. Sommerfeld,* 77 S.D. 191, 90 N.W.2d 77 (1958)). *Siedenburg* provides that this rule applies to both plaintiffs and defendants. *Siedenburg,* 77 S.D. at 193, 90 N.W.2d at 78. As in *Dougherty,* this Court's acceptance of State's contentions would only increase the benefits of the judgment for the State, by decreasing Plaintiffs' award. However, we reject State's arguments on the merits.

I) *Instruction that Replacement Cost Adjusted for Depreciation was a Factor in Determining Fair Market Value of Real Property*

▮ The State maintains that the jury was improperly instructed on the methods it was to use in calculating Plaintiffs' damages. The challenged jury instruction, No. 17, must be read in conjunction with Instruction No. 16(D):

No. 16(D):

As to damage as relates to real estate you may award the lesser amount only of the following sums of money which are to be arrived at as follows:

1) The fair market value of the real estate immediately before the occurrence and the fair market value of the real estate after the occurrence.

2) The second is the sum which you determine to be the reasonable expense of making the necessary repair of the property.

No. 17:

"Fair market value" means the amount of money which a purchaser of property, willing but not obliged to buy the property, would pay to an owner who is willing but not obliged to sell.

In determining "fair market value" you may consider such things as acquisition costs, when known, or replacement cost, adjusted by reasonable rates of depreciation; normal useful life of the property; condition of the property; along with other matters indicating the value of the property from all the evidence produced.

The State argues that the proper measure of damages was contained in Instruction No. 16(D), which was then negated by the reference to replacement value in Instruction No. 17. The trial court did not err.

In the context of destruction of personal property, this Court has written:

[T]o permit full replacement value would be to allow more than the actual value of the goods destroyed. We find that the trial court reached a reasonable measure of damages in utilizing original cost or replacement cost adjusted by a percentage for depreciation varying with the age and condition of the property.

*Shaffer v. Honeywell, Inc.,* 249 N.W.2d 251, 258 (S.D.1976) (footnote omitted). The footnote at the end of the above passage is particularly instructive:

This court has recognized a similar measure of damages in different settings. *See Ward v. LaCreek Electric Ass'n,* 1968, 83 S.D. 584, 163 N.W.2d 344 (destruction of things attached to realty) ... *Sheraton–Midcontinent Corp. v. County of Pennington,* 1959, 77 S.D. 554, 95 N.W.2d 892 (value of building for taxation); *Lampe Market Co. v. Alliance Ins. Co.,* 1946, 71 S.D. 120, 22 N.W.2d 427 (value of building in insurance case). ...

*Shaffer,* 249 N.W.2d at 258 n. 10.

Examination of the cases cited in the *Shaffer* footnote supports the trial court's instruction in the present case, notwithstanding the fact that real property is involved here. In *Ward v. LaCreek Elec. Ass'n,* 83 S.D. 584, 163 N.W.2d 344 (1968), a case involving repairable damage to a home, this Court held:

[T]he proper measure of damages to be applied ... is the lesser of the following:

I. The difference between the reasonable value of the house immediately before and immediately after its injury, or

II. The reasonable expense of repair if the house can thereby be substantially restored to its former condition.

*Ward,* 83 S.D. at 594, 163 N.W.2d at 349. The State's conceptual error is illustrated in *Rau v. Fritz,* 81 S.D. 311, 134 N.W.2d 773 (1965), a tax case:

The terms "actual value" and "true and full value" mean the "market value" of property to be assessed and market value has been defined as the price which a purchaser willing but not obligated to buy would pay an owner willing but not obligated to sell, taking into consideration all uses to which the property is adapted and might in reason be applied.... The worth of property for income and sale is also its worth for purposes of taxation. Elements bearing upon market value include the condition of the property, location, income derived therefrom, cost of replacement less depreciation and every other element which can reasonably affect its value.

*Rau,* 81 S.D. at 314, 134 N.W.2d at 775 (citations omitted). Similarly, in insurance cases involving the destruction of buildings, replacement cost less depreciation is a factor to be weighed in determining the "actual value" of real property:

Replacement cost, less physical depreciation, establishes the theoretical present cost of reproducing a particular building. It is not the invariable test of value because in a particular case other factors may overcome or qualify its influence upon sound opinion. Value, after all, is a matter of opinion.

*Lampe Market Co. v. Alliance Ins. Co.,* 71 S.D. 120, 124–25, 22 N.W.2d 427, 429 (1946) (citation omitted). This Court continued its analysis:

"Where insured buildings have been destroyed, the trier of fact may, and should, call to its aid, in order to effectuate complete indemnity, every fact and circumstance which would logically tend to the formation of a correct estimate of the loss. It may consider original cost and cost of reproduction; ... as well as any other fact reasonably tending to throw light upon the subject."

*Lampe,* 71 S.D. at 125, 22 N.W.2d at 429 (quoting *McAnarney v. Newark Fire Ins. Co.,* 247 N.Y. 176, 179, 159 N.E. 902, 905 (1928)). As these quotes indicate, replacement cost less depreciation is one component, among many, of market value. The trial court's instructions did not tell the jury to award to the Plaintiffs the replacement cost less depreciation instead of considering diminution of value. Instead, replacement cost less depreciation was correctly integrated into the calculation of market value, which itself is a component of the diminution test propounded by the State. We find no error here.

II) *Relocation Expenses*

■ State next argues that the trial court erred in allowing the Plaintiffs to introduce evidence concerning the cost of moving their farm buildings, sheds, and grain bins to higher ground in an effort to avoid future flood damage. This allegation of error is predicated on State's claim that there was insufficient evidence for Plaintiffs' position that the river would flood in the future. If evidence was insufficient, State asserts that the jury should not have been instructed to consider relocation expenses.

Testimony of three witnesses for the Plaintiffs provided evidence that future floods were a threat to the Heers' building site. Joe Hofer, who lived on the property before the Menno Dam was constructed, described the recurrent flooding which occurred frequently. Using photographs of the farm, Hofer showed the jury how high the river had risen in the past. Flynn Heer related that water flooding under grain bins would damage grain stored there. Milton Handel, Highway Superintendent of Hutchinson County, testified that Plaintiffs' house was only six inches above the river bank. A fourth witness, a hydrologist, was more equivocal, stating that the river would flood, but he qualified his statement by noting that it ignored conservation measures undertaken within the drainage basin.

Ironically, the evidence most damaging to the State's argument was provided by the State itself. Defense Exhibit A, an

appraisal made by the State's expert, Dick Payne, indicated that annual flooding of the Plaintiffs' cropland would enrich the soil, replacing any topsoil eroded by the dam rupture. Payne's in-court testimony also stressed the beneficial effect of recurrent flooding. This evidence, submitted for the State, destroyed State's contention that the river would not flood in the future.

It is settled law in South Dakota that a party to a lawsuit cannot claim the benefit of a version of relevant facts more favorable to his own contentions than he has given in his own testimony. *Miller v. Stevens*, 1934, 63 S.D. 10, 256 N.W. 152; *Harris v. Midwest Oil Company*, 1940, 67 S.D. 300, 292 N.W. 397; *Lenker v. Musilek*, 1953, 75 S.D. 60, 59 N.W.2d 417; *Ford v. Robinson*, 1957, 76 S.D. 457, 80 N.W.2d 471; *Johnson v. Norfolk*, 1957, 76 S.D. 565, 82 N.W.2d 656.

*Drier v. Perfection, Inc.*, 259 N.W.2d 496, 508 (S.D.1977). The determination of whether evidence is immaterial, conjectural, or remote is left to the practical judgment of the trial court and rests largely in its discretion. *Drier, id.* at 507. We therefore find no abuse of discretion in the admission of the evidence in question, nor in instructing the jury on the matter.

### III) *Crop Damage*

■ State's last argument is that later flooding reduced the Plaintiffs' crop damages to zero dollars because the measure of damage to crops is the difference between the crops' probable value at maturity, without injury, and the value of the injured crop at maturity. *See Swenson v. Chevron Chemical Co.*, 89 S.D. 497, 234 N.W.2d 38 (1975) (formula for measuring crop losses). It is argued that, as the crop would have been destroyed anyway, it had no probable value at maturity and, therefore, the Plaintiffs were not entitled to any recovery. In essence, the State's position is that an act of nature, unusual rainfall, was an intervening force which broke the chain of causation between the State's negligence and the harm inflicted.

Evidence established that subsequent flooding did occur; however, the hydrologist's testimony indicated that the collapse of the Menno Dam combined with water from the Dimock Dam, which broke on June 21, 1984, contributed to the overflow. The Restatement (Second) of Torts provides:

> If two forces are actively operating, one because of the actor's negligence, the other not because of any misconduct on his part, and each of itself is sufficient to bring about harm to another, the actor's negligence may be found to be a substantial factor in bringing it about.

Restatement (Second) of Torts § 432(2), at 430 (1965). Section 432(2) thus indicates that the State's acts are, on these facts, a cause of the later flooding. More recent authority is consistent with § 432(2):

> In only one considerable group of cases has the defendant been held liable where unforeseeable intervening causes have brought about unforeseeable results. It is quite often said in the cases that when the negligence of a defendant "concurs" with an act of God, which is to say an unforeseeable force of nature, the defendant is to be held liable.... In most of the cases the result brought about by the act of God is the same as that threatened by the defendant's negligence, so that the defendant is held liable for the foreseeable result. Where a totally different result is brought about, most cases agree that there is no liability, even though there is concurrence in causation.

*Prosser and Keeton on the Law of Torts*, § 44, at 314–15 (W. Keeton 5th ed. 1984) (footnotes omitted). The above quotation from *Prosser* parallels our own law:

> [W]here an act of God and the negligence of a defendant concur and proximately cause damage, the defendant is liable as though his negligence alone had caused the damage, but if the act of God was the sole cause, or as it is often termed the sole proximate cause, of the damage, defendant is not liable.

*Northwestern Bell Tel. Co. v. Henry Carlson Co.*, 83 S.D. 664, 672, 165 N.W.2d 346, 350–51 (1969). "If several causes concur in a loss, including an act of God, a party is not relieved from liability, and to exonerate

the defendant an act of God must be the sole proximate cause of the accident." *Id.,* 83 S.D. at 671, 165 N.W.2d at 350 (citations omitted). As in *Northwestern Bell,* the factual question of proximate cause was for the jury because the State's case was not so clear as to justify taking the issue from the jury. *Northwestern Bell,* 83 S.D. at 673–74, 165 N.W.2d at 351. Reasonable men could have regarded the State's negligence as a substantial cause, even of the later flooding. *Leslie v. City of Bonesteel,* 303 N.W.2d 117 (S.D.1981).

Reversed and remanded, in part, for recalculation of prejudgment interest.

MORGAN, J., concurs.

WUEST, C.J., and SABERS and MILLER, JJ., concur in part and dissent in part.

WUEST, Chief Justice (concurring in part and dissenting in part).

I concur in the majority opinion, except for the relocation issue. The trial court allowed plaintiffs to introduce evidence concerning the cost of moving their farm structures to higher ground in order to avoid future flood damage. The trial court also instructed the jury that plaintiffs could recover "reasonable" costs of relocation. I believe the trial court erred in doing so.

In order to recover the costs of relocation, plaintiffs had the burden of showing negligence on behalf of the state for future floods. The state admitted liability for the flood occurring on June 12, 1984. This flood was allegedly caused by the state's awareness of the dam's dangerous condition and its negligence in failing to correct it. This, however, does not mean that the state should be liable for future floods, unless it can be shown that it is negligent in causing them as well. Plaintiff's farm was built on a flood plain. The evidence indicated that the creek flooded before the dam was built and that it is likely to overflow its banks again. Whether future flooding will be of such magnitude that plaintiffs must relocate is purely speculative. Because plaintiffs failed to establish negligence on the state's part for any future floods, I fail to see how the state can be liable for the costs of relocation and would reverse on this issue.

SABERS, Justice (concurring in part and dissenting in part).

The majority opinion presents some good news and some bad news. The good news is very good. The law of prejudgment interest in South Dakota has taken a remarkable turn for the better. The law of prejudgment interest is now settled in that this court has unanimously determined that the trial court erred in refusing to grant prejudgment interest under SDCL 21-1-11 for damages sustained on Heers' hogs. In other words, my dissent in *South Dakota Building Authority v. Geiger-Berger Associates,* 414 N.W.2d 15, 27 (S.D.1987) (Sabers, J., concurring in part and dissenting in part), and joined by Justice Morgan, is the law of this case.

The bad news is that the opinion refuses to apply this prejudgment interest law to personal property damages of $132,562.06 and real property of $81,113.82. For this reason, I agree with this opinion in every respect except this one. I would reverse the trial court on its denial of prejudgment interest on the personal and real property because these damages were certain, or capable of being made certain by calculation through reference to prevailing markets for labor, materials, or values. Under SDCL 21-1-11, the plaintiff "is entitled," and the right to recover was vested in the plaintiff on a particular date, i.e., the date of the damage or the date the repair costs or values were fixed.

As I previously stated in *Geiger-Berger, supra* at 27:

The fact that the plaintiff did not treat these damages as certain until late in the game is relevant, but not determinative. Likewise, the fact that the jury verdict did not treat them as such is not the issue under the statute. The right to prejudgment interest under SDCL 21-1-11 is not determined by the amount claimed in the complaint, the amended complaint, or even the amount determined in the verdict. It is a question of

whether the proof reflects the elements of SDCL 21–1–11. If the proof does, then the court should mathematically compute the prejudgment interest.

Under the language of the statute, the question is whether the damages are "certain, or capable of being made certain by calculation[.]" In interpreting this phrase, this court has used a test first set forth in *Beka v. Lithium Corp.*, 77 S.D. 370, 375, 92 N.W.2d 156, 159 (1958). The *Beka* court held that damages meet the certainty requirement of SDCL 21–1–11 "if there exists established or reasonably ascertainable market prices or values of the subject matter by reference to which the amount due may be determined by computation." *Id.* Thus, even though damages may be unliquidated, if readily ascertainable values exist for damaged or destroyed property, "the general and better considered rule is to allow interest, at least in the absence of strong equities to the contrary." *Aetna Casualty & Surety Co. v. United States*, 365 F.2d 997, 1007 (8th Cir.1966) (applying SDCL 21–1–11), *cited with approval* in *Arcon Constr. Co. v. South Dakota Cement Plant*, 405 N.W.2d 45, 47–48 (S.D.1987); *Amert v. Ziebarth Constr. Co.*, 400 N.W. 2d 888, 890 (S.D.1987). It is unnecessary that the defendant actually know the amount owed. If the defendant can compute the amount from "reasonably available information," the court should award prejudgment interest. *Hageman v. Vander Vorste*, 403 N.W.2d 420, 422 (S.D.1987); *Amert, supra* at 891.

1. *Personal Property*

Within six weeks of the flood, a representative of the State went to the Heer farm "to work with them in attempting to establish what their damages were." The representative spoke with the Heers about their damages, and even obtained estimates to repair or replace the demolished hog confinement building, the Heer home, the shop building, and a corn bin. He obtained a list of the Heers' damaged or destroyed vehicles and figures on the number of hogs the Heers lost. Nearly three years before trial and the State's admission of liability, information was not only "reasonably avail-able" to the State, but its own representative had actually gathered information upon which it could compute the amount of damages. In addition, defense counsel introduced no evidence at trial on the Heers' personal property damage. Much of Heers' evidence on their personal property damage was essentially undisputed. These undisputed items included:

| Items | Exhibit No. | Amount |
|---|---|---|
| Pipe fittings | 62 | $ 356.97 |
| Feed system parts on hand | 71 | 2,555.38 |
| Shop supplies and parts | 57 | 22,942.29 |
| Damaged shell corn | 67 | 1,765.58 |
| Lost hog feed and medication | 53 | 7,058.25 |
| Seed loss | 35 and 59 | 5,151.29 |
| Herbicide and insecticide loss | 59 | 7,486.06 |
| "Miscellaneous items" | 60 | 11,201.58 |
| Automotive parts | 44 | 15,357.60 |
| Money and coins | 50 | 260.00 |
| Miscellaneous machinery | 69 | 16,602.00 |
| Fuel injection inventory | 45 | 7,784.90 |
| Trailer repairs | 42 | 1,739.30 |
| Troy Muchmore's property | 109 | 877.88 |
| Food | 64 | 1,959.25 |
| Appliances | 47 and 48 | 9,051.89 |
| Office supplies | 58 | 274.41 |
| Furniture | 46 | 15,237.02 |
| Lost paints and cleaners | 63 | 849.25 |
| Clothing | 61 | 2,784.96 |
| Jewelry | 49 | 1,189.80 |
| TOTAL | | $132,485.66 |

Even if all of these items are not substantially certain or capable of being made certain by calculation through reference to existing markets, the trial court should have determined those that were and submitted the remainder to the jury.

2. *Hogs*

As indicated in the majority opinion, the Heers computed the number of hogs lost by relying upon their purchase and sales records. They determined the average weight by using carcass weights of dead hogs picked up by a rendering plant after the flood and multiplied that by the market price at the time of the flood. This figure came to $50,382.90. The State's representative used the same method of calculation two and one-half years before trial.

3. *Real Property*

The State's own witness, Mr. Payne, computed the fair market value of Heers' real property before and after the flood. He concluded that with the cost of various repairs and clean-up, the damage to the

Heers' real property totalled $81,113.82 (Exhibit A). Thus, the State cannot claim that these damages were not certain or capable of being made certain by reference to markets. Nor does the fact that there was a difference of opinion as to damages preclude prejudgment interest as a matter of law for real property damages. *See Arcon, supra; Kellogg v. Rowett*, 408 N.W.2d 334 (S.D.1987).

As stated by the Minnesota Supreme Court in *ICC Leasing Corp. v. Midwestern Machinery Co.*, 257 N.W.2d 551, 556 (Minn. 1977):

A bona fide dispute as to the amount of damages should not bar the accrual of interest in all circumstances or a plaintiff's right to interest would depend merely upon the reasonableness of the defendant.... In determining whether interest should be allowed the question was not whether the parties agreed on the amount of damages but whether [the defendant] could have determined the amount of its potential liability from a generally recognized objective standard of measurement.... Mere difference of opinion as to the exact amount of damages was not sufficient to excuse [defendant] from compensating [plaintiff] for loss of the use of its money from July 1970 until the judgment in 1975.

The majority opinion purports to deny prejudgment interest because it is impossible for a defendant to reasonably know what it should pay a plaintiff. As stated in *Amert*, the defendant should not be able to avail himself of this argument unless he has in fact tendered payment or made an offer of payment. The language of the statute provides, "except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt." In this case, the State, as a debtor, does not even claim that they were prevented by law, or by the act of the creditor, from paying the debt. In fact, the State continually and vigorously persisted in their right to resist the debt. Obviously, a debtor has the right to resist the debt, but in the mean time, he has had the use of the money and should pay interest on the obligation in accordance with SDCL 21-1-11, *Meyer v. Dixon Brothers, Inc.*, 369 N.W.2d 658 (S.D.

1985); *Amert, supra;* and *Geiger–Berger, supra.*

As stated in *Geiger–Berger, supra* at 28:

The reference in SDCL 21-1-11 is to the right to recover upon a particular day. As soon as damages are certain or capable of being made certain by calculation by reference to prevailing markets for labor and materials, then damages are vested and interest begins to run. Interest should be awarded from the date each item of expense was incurred. The trial court denied prejudgment interest because it believed it could not ascertain a definite date when interest began to accrue. There may have been some difficulty, but it was certainly possible here. The only time there is a tolling of the reasonable period before interest runs is if the debtor tried to pay and the creditor refused to accept. SDCL 21-1-11. As stated above, it is a question of whether the proof reflects the elements of SDCL 21-1-11. If the proof does, and it does in this case, then the court should mathematically compute the prejudgment interest.

Therefore, under SDCL 21-1-11, the trial court should have awarded prejudgment interest on personal property of $132,485.66, hogs of $50,382.90, and real property of $81,113.82 for a total of $263,982.38. From the interest computed on this amount, the trial court should subtract any interest previously computed under the jury verdict on personal and real property.

I would reverse and remand for this purpose.

MILLER, Justice (concurring in part, dissenting in part).

I concur with the majority opinion except:

(1) I spiritually join Chief Justice Wuest's special writing regarding the relocation expenses issue; and (2) I specifically join Justice Sabers' special writing relating to the denial of prejudgment interest.

ative defenses; defendant is required to set forth each affirmative defense.   W.S.A.